(June 14, 1966)

■ PAULA MERCED, as Administratrix of the Estate of LUIS MERCED, Deceased, Respondent, v. RICHARD E. HARRIS et al., Appellants.

MEMORANDUM. Judgment for plaintiff entered upon a verdict of a jury, affirmed, with $50 costs and disbursements to the plaintiff. The issues of fact, including the weighing of the credibility of witnesses, were for the jury. Its verdict may not be rejected upon the mere ground that certain conceded facts favor the defendant's version of the accident. Plaintiff's witnesses, Mujica and Pacheco, testified that, as the decedent was walking slowly across the street, he was hit with the right front of defendants' vehicle. Pacheco testified that the decedent was about six feet from the curb, that defendants' car was traveling at about 15 to 20 miles an hour, and that he heard no horn sounded before the impact. The testimony was that the decedent then fell to the ground. Mujica testified that he told the defendant driver to stop but that he accelerated the car. It was established that the decedent was dragged by the vehicle for the approximate distance of a block before defendant driver stopped his car. The driver said he stopped because his wife, seated in the car with him, said that she felt or heard a drag, but the jury probably did not believe his testimony that he drove the distance of three-quarters of a block without realizing that his car was dragging a body. The case was submitted to the jury on a particularly fair charge to which there were no exceptions. The jury rejected the defendants' explanation for the accident (it is noted that testimony of defendant driver is very indefinite in certain respects). Issues of credibility were for the jury and its verdict for plaintiff may not be disregarded unless the evidence so preponderates in favor of defendants that a verdict for plaintiff could not be reached on any fair interpretation of the evidence. (See *Marton* v. *McCasland,* 16 A D 2d 781, and cases cited.)

STEUER, J. (dissenting). In this action for wrongful death, we believe that the verdict is against the weight of the credible evidence in that it involves a finding directly contrary to the physical facts, general experience and the testimony of the only disinterested witness. Furthermore, the verdict contains inherent evidence that it was the result of sympathy.

The accident occurred at 4:30 in the morning of September 29, 1962. The defendants, husband and wife, were driving home after visiting a friend and attending a moving picture in Queens. They were going through East 165th Street and were between Morris and College Avenues. East 165th Street is a two-way street, three lanes in width. At the time, parking was allowed on the south side of the street, and that lane was completely occupied. Defendants were driving east. Somewhat ahead of them was a small panel truck. This truck came to a stop about two thirds of the way down the block, opposite a bar and grill, and double parked in the eastbound lane. When defendant arrived at a point behind the truck, which blocked his line, he stopped momen tarily. He then pulled out into the south or westbound lane, where the contact between the care and the decedent, who was in the roadway, took place. Con cededly, defendant had his lights on and his horn sounded before the contact. Deceased was one of a group of four or five men who had just come out of the bar, where they had been drinking for hours. It appears that the driver of the truck was also friendly with the group. He had been drinking at the home of a friend for about two and a half hours and then drove to the bar. Appar-

ently he saw his friends emerge from the bar and they saw him and started across the street to greet him. One of the men who had been with the decedent Mujica, testified, as did the truck driver. Mujica testified that defendant's car was going about four or five miles an hour and that he heard the horn. Both he and the driver testified that, after the contact, defendant's car proceeded down the street at about 15 miles an hour. It would appear that the serious consequences of the accident resulted not from the contact but from the fact that the deceased got caught in the car and his body was dragged practically to the corner.

About all of the foregoing there is practically no controversy. Defendant's version of the accident is that after pulling into the westbound lane he found the street obstructed by a group of men. He sounded his horn and approached the group very slowly, stopping at intervals where necessary. The men gathered around the car. Defendant husband rolled down his window to remonstrate. The deceased struck him, knocking off his glasses, and opened the door, trying to pull defendant out. Defendant, partially out of the car, succeeded in pushing the deceased away, closed his door and started to drive away. Near the end of the block, his wife felt that there was a drag on the car. He got out and saw the deceased alongside the car in the roadway. He first had his wife lock the doors to protect her and then went to notify the police.

The only disinterested witness was a pedestrian who was walking west on 165th Street. He saw a group of men gathered around the car, shouting and apparently trying to get in it. He saw the car drive off. He avoided any involvement in the incident until he heard a woman scream and saw the car and walked back to it.

The conceded facts plainly favor defendant's version. Defendant had a narrow space in which to pass the parked truck. It would be contrary to experience to expect that he negotiated the few feet between the point where he admittedly stopped and the claimed point of contact through a single lane at anything in excess of walking speed. He was in plain view, on a clear night. The witnesses who testified on behalf of the plaintiff both saw him before the accident and one heard his horn. Had the men not been in the street, there was no occasion for the horn. Had they proceeded across the street, as they had ample opportunity to do, there would have been no accident. That the accident happened as defendants contend is corroborated by the only disinterested testimony in the case.

Deceased lived 23 hours after the accident. He was conscious and in pain. Yet the jury awarded nothing for his pain and suffering. Clearly this is an indication that they felt that his conduct precluded an award on this basis. The award to his dependents was equally plainly the result of sympathy for their deprivation without fault on their part. The jury showed a greater concern for the unfortunate widow and children than had the deceased. He was separated from his family and contributed $25 a week to their support, only on the compulsion of a court order.

On a motion to set aside the verdict, the court stated that he believed the defendants' version represented the fact, but he could not set the verdict aside. The court was especially concerned because the verdict exceeded the amount of the defendants' insurance, and he took pains to see that plaintiff would accept satisfaction from the policy. This concern, laudable though it may be, illustrates a dangerous trend which, as indicated, must have influenced the jury. The philosophy is that the defendants personally should not be penalized by being forced to pay when they are not at fault, but it would seem that it is a different matter entirely as regards their **insurer.**

We understand that the majority was largely influenced by the conceded fact that defendants' car dragged the deceased for a considerable distance. The uncontradicted evidence is that as soon as defendant became aware of this the car was stopped. No charge of negligence can be supported on this fact.

The judgment should be reversed and a new trial ordered.

Breitel, J. P., Rabin and Eager, JJ., concur in Memorandum; Steuer, J., dissents in opinion in which McNally, J., concurs.

Judgment for plaintiff entered upon a verdict of a jury, affirmed, with $50 costs and disbursements to the plaintiff, etc.