KENNETH N. STANTON, III, et al., Respondents, v NIAGARA MOHAWK POWER CORPORATION, Appellant, et al., Defendants.—Yesawich, Jr., J. Appeal (1) from a judgment of the Supreme Court in favor of plaintiffs against defendant Niagara Mohawk Power Corporation, entered November 7, 1984 in Schoharie County, upon a verdict rendered at Trial Term (Hughes, J.), and (2) from an order of said court, entered November 13, 1984 in Schoharie County, which denied defendant Niagara Mohawk Power Corporation's motion to set aside the verdict.

In the early morning hours of June 2, 1979, a fire destroyed a dairy barn, animals, equipment, hay and other property belonging to plaintiffs. Two days before the fire, a Perini Construction Company, Inc. (Perini) backhoe came into contact with a transmission line owned by Niagara Mohawk Power Corporation (NiMo) during construction of a highway. The resulting fault in the electric current activated oil circuit breaker R-1, which tripped four times in an attempt to clear the fault before "locking out", i.e., cutting off the flow of power. NiMo employees placed R-1 back in operation that same day after power readings and a visual inspection indicated it was functioning normally.

The next evening, June 1, 1979, plaintiff Kenneth N. Stanton, III, observed that the milk in his bulk tank was unduly warm. He immediately summoned an Agway, Inc., repairman, who noticed that the tanks' compressor motors were unaccountably running; his addition of Freon to the compressor appeared to normalize the cooling process. Several hours later at about 10:30 P.M., NiMo began receiving phone calls from

customers complaining of dim lights in the service area which included plaintiffs' farm. A NiMo line crew began investigating the problem an hour later, but found nothing and returned to the service center. While at a social gathering in the area, NiMo's transmission and distribution supervisor, John Allen, noticed the lights were dim and left for the service center to also investigate; at 12:10 A.M., he informed NiMo's dispatcher that the dim lights problem had apparently passed. Twenty minutes later, however, the lights at the service center dimmed and the dispatcher fielded additional calls reporting bright lights, blown light bulbs and other problems with the voltage. Shortly afterward, linemen arrived at the substation containing R-1, found it to be smoking, and shut it off. At 1:00 A.M., a passing motorist discovered plaintiffs' barn afire.

An action to recover property damages suffered by plaintiffs as a result of the fire was commenced against NiMo, Agway and Perini. A jury determined that NiMo was grossly negligent, that it alone was liable and awarded damages in the amount of $115,000. NiMo reasserts here its arguments, rejected by the trial court, that plaintiffs failed to establish a prima facie case and that the verdict was against the weight of the evidence. We affirm.

At trial, plaintiffs introduced proof that the R-1 circuit breaker was 50 years old at the time of the fire and that, despite a NiMo policy to overhaul that breaker every two years, it had been last overhauled in April of 1977. The original service manual supplied for R-1 instructed that all contacts within the breaker be inspected frequently, "especially after short circuits", and that its oil ought also to be inspected after heavy short-circuits. In the opinion of plaintiffs' expert, such an inspection of the inner workings of R-1 should have been performed following the major fault caused by the Perini incident. NiMo failed to do so and, instead, simply put the breaker back in service after only a cursory visual inspection of its exterior—an inspection which, admittedly, would not and did not reveal the condition of R-1's contacts or oil.

Plaintiffs' proof respecting how NiMo responded to the various customer complaints of dim lights and blown light bulbs occasioned by voltage fluctuations which began at about 10:45 P.M., on June 1, 1985 also justified submitting the question of NiMo's gross negligence to the jury and its decision thereon (see, Austro v Niagara Mohawk Power Corp., 103 AD2d 903, revd on other grounds 66 NY2d 674). A NiMo line

crew, assembled over an hour later, not only limited its probe to a search for downed wires and fallen limbs, but failed to check the very substation serving the area. Additionally, the utility's Albany district office delayed 2½ hours before relaying NiMo supervisor Allen's request that substation personnel be summoned immediately.

Nor do we find error in the trial court's ruling that plaintiffs presented evidence of causation sufficient for determination by the jury. Both the Middleburg Fire Chief and plaintiffs' engineering expert testified that the voltage problems resulting from the malfunctioning of R-1 caused plaintiffs' compressors to overheat and, thereby, started the fire in plaintiffs' barn.

Giving plaintiffs the benefit of every inference which may reasonably be drawn from the evidence in the record (see, *Loeb v Teitelbaum,* 77 AD2d 92, 103, *mod on other grounds* 80 AD2d 838), the verdict was not, as NiMo urges, against the weight of the evidence. Significantly, the utility offers no alternative explanation for the problems with plaintiffs' compressors or the cause and origin of the fire.

Our conclusion that the record amply supports the jury's finding of gross negligence makes it unnecessary to address plaintiffs' contention that the trial court erroneously failed to submit to the jury plaintiffs' theory that because of ambiguities in its tariffs, NiMo could be held liable for ordinary negligence rather than the more demanding standard of gross negligence.

Judgment and order affirmed, with costs. Main, J. P., Casey, Weiss, Yesawich, Jr., and Harvey, JJ., concur.