Rosenblatt, J.
(concurring). The Chief Judge has written a cogent decision resolving a conundrum that has beset the law of malicious prosecution: the appropriate test for determining what is a “favorable termination.” The Court, I believe, has articulated the test correctly, holding that the speedy trial dismissal was “not inconsistent with innocence” and therefore constituted a favorable termination. I write separately only to emphasize that this test is far more sensible than the “indicative of innocence” test articulated in MacFawn v Kresler (88 NY2d 859).
Over a century ago, this Court established the general rule that a criminal prosecution terminated “favorably” if the accused was not convicted and “there [could] be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense” (Robbins v Robbins, 133 NY 597, 599). A primary purpose behind the favorable termination element was (and still is) to ensure against “conflicting determinations” and parallel litigation in criminal and civil actions (see, Robbins v Robbins, supra; see also, Hauser v Bartow, 273 NY 370, 375; Prosser and Keeton, Torts § 119, at 874 [5th ed]).
Criminal cases that do not end in convictions are not always considered “favorable” to the accused. For example, a criminal case is not terminated “favorably” if the prosecutor abandons it because of misconduct by the accused preventing successful prosecution, or pursuant to a compromise between the accused and the complainant, or out of mercy requested or accepted by the accused (see, Restatement [Second] of Torts § 660 [a]-[c]). This all makes good sense under an estoppel rationale: we foreclose malicious prosecution actions by those who carry even an aroma of guilt. The estoppel rationale is not applicable, however, to an innocent plaintiff who was relieved of criminal charges in a neutral manner, i.e., one that carried no indicia of guilt or innocence.
The “not inconsistent with innocence” rule is the equivalent of the Robbins rule (together with estoppel-type exceptions). For the most part, New York jurisprudence conformed to this rule until Heaney v Purdy (29 NY2d 157). There, the Court *201 held that a malicious prosecution action could “not be maintained if the prior prosecution [did] not ‘fairly impl[y] lack of a reasonable ground for the prosecution’ ” (Heaney v Purdy, supra, at 160 [quoting Halberstadt v New York Life Ins. Co., 194 NY 1, 11]). Subsequent decisions relied on the Heaney majority’s articulation of the favorable termination standard and held that a termination could not be deemed favorable unless it affirmatively indicated innocence (Hollender v Trump Vil. Coop., 58 NY2d 420, 425-426 [quoting Restatement (Second) of Torts § 660, comment a]; see also, Ward v Silverberg, 85 NY2d 993, 994; MacFawn v Kresler, 88 NY2d 859, 860, supra).
The transformation of the formulation from Robbins v Robbins (133 NY 597, 599, supra) to Hollender v Trump Vil. Coop. (58 NY2d 420, 425-426, supra) resulted at least in part by references to infelicitous language in the Restatement (Second) of Torts § 660, comment a, to the effect that favorable terminations are to be equated only with dispositions that “indicate the innocence of the accused” (see, Hollender v Trump Vil. Coop., supra). The comment, however, is better read in conjunction with its heading (“Termination inconsistent with guilt”) and the actual provisions of section 660 to which the comment applies (Restatement [Second] of Torts § 660 [a]-[c]). In my view, the Restatement does not purport to read into the favorable termination element a requirement that the underlying criminal termination “indicates innocence.”
The pre-Heaney “not inconsistent with innocence” rule, designed to exclude only undeserving plaintiffs, had thus become transformed into the “indicative of innocence” rule. Dissenting in Heaney, Judge Breitel (joined by Judge Jasen) cautioned against this transformation. He argued that a neutral criminal termination, inconsistent with guilt, should continue to satisfy the favorable termination element (see, Heaney v Purdy, 29 NY2d 157, 161, n, supra). The “indicative of innocence” rule carried the potential for sweeping out claims by deserving plaintiffs whose criminal cases were disposed of in ways that carried not even the slightest indication of guilt.
An “indicative of innocence” test saddles plaintiffs with a burden that is often difficult if not impossible to prove in speedy trial dismissal cases. Recognizing, this, courts strained to squeeze speedy trial dismissals into the “indicative of innocence” pigeon hole (see, e.g., Loeb v Teitelbaum, 77 AD2d 92, 101). Too often it is a poor fit. Most of the time, speedy trial dismissals do not indicate innocence. Unless supported by reasons set forth on the record — a rarity — a speedy trial dis *202 missal generally indicates nothing as to guilt or innocence. Typically, those dismissals are neutral and do not suggest guilt, innocence or anything other than the fact that the time ran out.
Indeed, some speedy trial motions are fiercely resisted. A review of the large body of CPL 30.30 decisional law reveals as much. Speedy trial dismissals may be the product of under-staffing, imperfect case management, inefficiencies in detainer filings or interstate rendition, turnover of personnel, bureaucratic delay, misunderstanding, police department or prison delays, misplaced files, demands of other States or jurisdictions or the difficulty of tracking witnesses — or simply allowing a weak case to languish — to name a few of the more common reasons.
Moreover, a speedy trial dismissal, particularly when unresisted, may reflect a prosecutor’s belief that the case cannot be proved. But even then the reasons are not necessarily indicative of innocence. In prosecuting a possessory crime, for example, the District Attorney may drop the case, unconvinced of defendant’s ever having possessed the contraband at all, or because the police seized it from defendant’s possession in violation of the Fourth Amendment. Or perhaps because the contraband was lost somewhere in the evidence room, or mistagged.
By virtue of the Court’s endorsement of the “not inconsistent with innocence” test in speedy trial cases, New York courts will no longer have to engage in jurisprudential gymnastics or semantics. Nor will courts have to contemplate the prospect of an exotic branch of jurisprudence in which Assistant District Attorneys are summoned to appear at trials or depositions to answer (or not answer) questions as to their subjective opinions relating to the degree of guilt of the accused, the strength of the case, their work habits and philosophies, their attitudes toward particular crimes or the reasons they abided or resisted a speedy trial motion.
The “indicative of innocence” rule potentially stood to bar recovery by deserving plaintiffs whose criminal cases were dismissed on neutral grounds. As a practical matter, the cases that satisfy a malicious prosecution claim are often weak from a prosecutorial standpoint. Given that prosecutors generally will be more likely to neglect a weak case than a strong one, the “indicative of innocence” standard creates a paradox:
In case number one, a complainant bent on malice causes the arrest of a wholly innocent person based on trumped up al *203 legations. The accused wants vindication, but the prosecution drags its feet, believing the case lacks merit. Eventually, the criminal court grants the accused’s speedy trial dismissal motion. In case number two, a more credible complainant provides the prosecution with a meritorious case more likely to sustain the prosecutor’s interest. Accordingly, the prosecutor takes it to trial — but the jury acquits.
Under the “indicative of innocence” rule, only the second accused gains a “favorable” termination. The first does not, even though the accusation was trumped up and malicious. The more far-fetched the accusation, the greater the likelihood the case will be dismissed on speedy trial grounds, thereby dooming the accused’s subsequent malicious prosecution suit. In the end, the most wrongly maligned are the least likely to gain civil redress.
The Court obviously is sensitive to this paradox and rectifies its consequences by applying the “not inconsistent with innocence” test. In that manner, a potentially deserving plaintiff whose criminal case was dismissed by a neutral speedy trial termination satisfies the favorable termination element.
Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur with Chief Judge Kaye; Judge Rosenblatt concurs in a separate concurring opinion; Judge Levine taking no part.
Order reversed, etc.