Wilson Jose **FERREIRA** and Ricardo Atelino Guimares Silveira, Plaintiffs,

v.

**WESTCHESTER COUNTY**, David Demore, Ray Fennell, Kevin Serrette and John Iurato, Defendants.

No. 93 CV 0175.

United States District Court, S.D. New York.

Jan. 19, 1996.

**212**

Steven Loren, Yonkers, NY, for Plaintiff.

John M. Murtagh, Lunney, Crocco & De-Maio, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiffs Wilson Jose Ferreira and Ricardo Silveira bring an action against defendants Westchester County ("the County") and David Demore, Ray Fennell, Kevin Serrette and John Iurato, all of whom are police officers employed by the County (collectively,

"the Officers"), under 42 U.S.C. §§ 1983 and 1988. The case arises out of a set of events which occurred on January 14, 1992, and which culminated with the arrests of both plaintiffs by the Officers.

In addition to federal claims for assault, false arrest, false imprisonment, abuse of process and malicious prosecution, pursuant to 42 U.S.C. § 1983, plaintiff also alleges state tort claims.[1] Before the Court is Defendants' motion for summary judgment pursuant to Fed.R.Civ.P. Rule 56. For the reasons set forth below, the Court grants summary judgment in favor of the County on all § 1983 claims and in favor of the Officers on plaintiffs' claim for other than those for excessive force, false arrest, false imprisonment, abuse of process, and malicious prosecution. Further, the Court grants summary judgment against Silveira on his state-law tort claims for false arrest, false imprisonment and malicious prosecution.

## FACTS

On January 14, 1992, Officer David Demore ("Demore") witnessed a car with translucent tape blocking the rear window driving east on the Cross County Parkway. He signalled the car to pull over, and it came to a stop on a lighted exit ramp. The car pulled over and the driver stepped out briefly, thus giving Demore a chance to view him. The driver then returned to the car and led Demore on a high speed chase through the streets of Yonkers and Mt. Vernon and over the Cross County and Hutchinson River Parkways.

The chase culminated in a head-on collision on the Sandford Boulevard exit from the Hutchinson River Parkway. At this point, Demore had another chance to view the driver from a closer distance, and observed two other passengers in the vehicle as well. Shortly thereafter, the two passengers exited the car. Demore apprehended one of them—Martin Isidron—while the other returned to the vehicle. The car sped away while Demore placed Isidron in his car.

---

**1.** Plaintiffs' assault claims reflect alleged violations of their Fourth Amendment right to be free from unlawful "seizure," hereafter referred to as "excessive force claims."

Fennell and Serrette, having heard Demore's radio calls for assistance, arrived at the scene of the collision. Demore described the fleeing suspects, and they all drove off in search of the then out-of-sight vehicle. They located the car several minutes later abandoned on Sandford Boulevard. A passer-by reportedly told Officer Fennell that the suspects fled around the corner onto Fulton Avenue. Fennell turned onto Fulton Avenue and spotted two individuals fitting Demore's description. He attempted to stop the suspects for questioning.

Defendants contend that, at this point, the plaintiffs attempted to flee. Plaintiffs contend that they did not attempt to flee but instead were set upon by the Officers. In either case, it is undisputed that Demore and Serrette spotted Fennell struggling with the plaintiffs and assisted him in arresting them. Demore confirmed that these were the individuals he had been chasing.[2] The Officers contend that the plaintiffs attempted to strike them and that they responded by using the minimum amount of force necessary to gain control of and arrest the suspects. Plaintiffs testify that they were kicked and struck by some or all of the Officers.[3]

Following their arrests and processing, plaintiffs were taken to Westchester County Medical Center for treatment of minor scrapes and bruises. On March 20, 1992, Silveira, suspected of being a passenger in the car, pled guilty to a charge of disorderly conduct in Mt. Vernon City Court. Meanwhile, on March 2, 1992, a felony hearing was held in the Mt. Vernon City Court with respect to Ferreira's role as the driver of the car. Judge DiBlasi ruled that there was "reasonable cause" to believe that Ferreira

had committed the felony of criminal mischief in the second degree and ordered him held pending the action of a Grand Jury. On April 14, a Grand Jury indicted Ferreira on charges of criminal mischief in the fourth degree, criminal mischief in the third degree, resisting arrest and violations of vehicle and traffic law. Ferreira was acquitted of all charges at a bench trial before Justice Carey of the County Court in June of 1993.

## DISCUSSION

### A. Standard For Summary Judgment

 Under Rule 56(c) of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a "judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986) see also *Gallo v. Prudential Residential Servs. Ltd*, 22 F.3d 1219, 1223 (2d Cir.1994.) The nonmoving party must meet a burden of coming forward with "specific facts, showing that there is a genuine issue of fact for trial," Fed.R.Civ.P. 56(e) by a showing sufficient to establish the existence of [every] element essential to the party's case, and on, which the party will bear the burden of proof at trial.

 In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor

---

**2.** Isidron testified that he told the officers that the people they arrested were not the same people who had been in the car. Officer Serrette admits that he spoke with Idsidron but claims that because of a language barrier, he could not understand him. However, this information is not material. First, Isidron himself, was linked to the suspects. Second, plaintiffs were already under arrest for resisting arrest when Isidron allegedly provided this information.

**3.** Plaintiffs dispute certain details of the events leading up to their arrests. Specifically, plaintiffs dispute the length and quality of Demore's opportunities to see the driver of the vehicle he

was chasing and the existence of the passer-by. However, these disputes are not material here. Plaintiffs offer no evidence to support their allegations on either issue; and, moreover, they do not allege that Demore's opportunities to view the driver of the vehicle were insufficient as a matter of law to support a reasonable belief in the existence of probable cause. As discussed below, the issue of qualified immunity turns not on the existence of probable cause but on the objective reasonableness of an officer's belief in its existence, irrespective of whether such probable cause in fact exists.

of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d. Cir. 1989). The Court is to inquire whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party, *Anderson v. Liberty Lobby Inc*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986), however, and to grant summary judgment where the nonmovant's evidence is merely colorable conclusory, speculative or not significantly probative. *Knight v. United States Fire Ins.*, 804 F.2d 9, 12–15 (2nd Cir.1986), *cert denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## B. 42 U.S.C. § 1983

42 U.S.C. § 1983 provides, in relevant part, that:

"[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...."

■ Section 1983 is thus not an independent source of substantive rights but instead provides a remedy for the vindication of federal rights created by the Constitution or laws of the United States; Section 1988 permits recovery of attorneys fees in successful Section 1983 actions in the discretion of the court.

## 1. Immunity of Defendant Westchester County

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities and other local government units are included among those "persons" to whom the Civil Rights Act of 1871 applies. Yet the Court in *Monell* held that municipalities are immune from respondeat superior liability under § 1983, and thus limited municipal liability in civil rights actions to those cases where the injuries alleged were directly caused by a municipal "policy or custom."

In *Monell*, the Court found that plaintiffs stated a valid § 1983 claim where defendant had instituted a policy requiring pregnant employees to take unpaid leaves of absence because the policy in and of itself violated federally protected rights. However, where, as in the present case, an action against a municipality under 1983 alleges a policy—failure to properly train employees—which is further removed from claimed constitutional violations, there is a higher threshold. Since then, the Supreme Court held that § 1983 liability cannot be imposed on a municipality based only on proof of a single instance of unconstitutional activity, and that "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train in a relevant respect amounts to deliberate indifference to the rights of persons with whom the police come into contact," *Canton*, 489 U.S. at 388, 109 S.Ct. at 1204, since only such deliberate behavior can be properly thought of as a city 'policy or custom', and "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *Id*, citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037–38. In that case, a detainee alleged a violation of her right to receive necessary medical attention while in police custody. The Court noted that *Monell* will not be satisfied by a mere allegation that "an existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible," since "[t]he issue ... is whether that training program is adequate; and if not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Canton*, 489 U.S. at 389–90, 109 S.Ct. at 1205.

Our Court of Appeals has held that a single incident, especially if it involved actors below the policy-making level, is insufficient to raise an inference of the existence of a custom or policy. See *Powell v. Gardner,* 891 F.2d 1039 (2d Cir.1989); *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992); *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119 (2d Cir.1991); *Sorlucco v. NYC Police Department,* 971 F.2d 864 (2d Cir. 1992) (before the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials); although evidence that a municipality repeatedly failed to meaningfully investigate complaints could create such an inference. See *Ricciuti,* 941 F.2d at 122; *Gardner,* 891 F.2d at 1045.

■ In this Circuit, for a municipality to be liable for a failure to train or supervise, the plaintiff must show, first, "that a policymaker knows 'to a moral certainty' that his employees will confront a given situation;" second, "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and,

third, "that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker,* 974 F.2d at 297–298.[4]

■ In cases where there is training or where the wrongfulness of the official conduct at issue is blatant, the plaintiff can survive summary judgment only by producing "some evidence that policymakers were aware of a pattern of (unconstitutional conduct) but failed to (respond)." *Walker,* 974 F.2d at 300.

■ Here, plaintiffs have not even alleged that their injuries are the result of any official municipal policy, that other similar events have occurred, or that the County failed to train its officers. However, plaintiffs have asserted that the County was "negligent" and "consciously indifferent" in the "hiring, training, and managing" of the defendant police officers. Plaintiffs' allegations against the County are insufficient. First, they have failed to set forth specific facts showing that there is a genuine issue of fact for trial. Fed.R.Civ.P. 56(e). Second, plaintiffs must do more than show the need for training on this issue; they must show how a particular policymaker's specific choice with

---

4. In *Walker,* a man who had been convicted on perjured testimony and had spent 19 years in prison, brought a § 1983 action against the City of New York for its alleged indifference to his constitutional rights. In his complaint, he alleged that the police department had no policy with respect to the proper handling of exculpatory evidence, that the police department had an obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent, and that the District Attorney's office lacked training and supervision with respect to Assistant District Attorney's obligations to disclose exculpatory evidence and to avoid the use of perjured evidence. The district court dismissed the suit for failure to state a claim on which relief can be granted, reasoning that the police had complied with their constitutional obligations by turning over exculpatory evidence to the prosecutors, and that there was no need to train officers not to perjure themselves or prosecutors with respect to *Brady* obligations since these duties should be obvious to all.

The Second Circuit reversed in part. It affirmed the dismissal of the claims based on the allegations with respect to the police department's want of a policy on the proper handling of exculpatory evidence, since, although such allegations, "[i]f true, might, in the proper case,

provide the basis for a deliberate indifference claim under (the above test)," they did not do so in the instant case because the complaint did not allege that the police had concealed any evidence from the prosecution. *Walker,* 974 F.2d at 299. It permitted further discovery on the plaintiff's claim based on the police department's alleged obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent, noting that though there is no general duty to train where "the proper response—to follow one's oath, not to commit the crime of perjury and to avoid prosecuting the innocent—is obvious to all without training or supervision," "[i]f Walker can produce some evidence that policymakers were aware of a pattern of perjury by police officers but failed to institute appropriate training or supervision, his claim can survive summary judgment." *Walker,* 974 F.2d at 300. Finally, the court reversed the district court as to the plaintiff's claims against the District Attorney's office, reasoning that, prosecutorial obligations under *Brady* are not so obvious as to require no training, and a district attorney is a municipal policymaker with respect to actions taken as the manager of the district attorney's office. *Walker,* 974 F.2d at 300–01.

respect to the training deficiency at issue reflects "deliberate indifference" to their constitutional rights, and how this indifference directly caused their injuries. *Canton,* 489 U.S. at 388–89, 391, 109 S.Ct. at 1204–05, 1206 ("adequately trained officers occasionally make mistakes [and] the fact that they do say little about the training program or the legal basis for holding the city liable").

Third, while plaintiffs allege that the Officers were unreasonable in finding probable cause to arrest them—evidence of inadequate training on the part of the County, they have not even alleged the existence of any other incidents similar to the one which serves as the basis for their cause of action. This is not enough. See *Tuttle,* 471 U.S. 808, 821, 105 S.Ct. 2427, 2435; *Gardner,* 891 F.2d 1039, 1045; *Walker,* 974 F.2d 293, 296; *Ricciuti,* 941 F.2d 119, 122.[5] Moreover, we are not persuaded by plaintiffs that Tuttle is distinguishable based on officers participated in their arrests "changes this one episode into several incidents."

### Plaintiffs' Request for Additional Discovery

■ Under Fed.R.Civ.P. 56(f), where a party opposing a motion for summary judgment cannot present by affidavit facts essential to justify the party's opposition, the court may, in its discretion, refuse the application for judgment or order a continuance to permit further discovery. Because plaintiffs here have failed to provide any information linking their injuries to a policy or custom of the County and because plaintiffs' very allegations against the Officers are inconsistent with a theory of municipal liability in that they allege deliberately unconstitutional acts by nonpolicymaking employees, we decline to grant the motion.

### 2. Officer Immunity

■ The Officers raise the affirmative defense of qualified immunity from liability based on the official nature of their actions. Qualified immunity provides government officials performing discretionary functions with protection from liability for civil damages in "constitutional tort" suits just as they were protected in common-law tort suits. This defense has generated a great deal of confusion and academic discussion, in part because of the interrelation between the substantive law governing its scope and the ostensibly procedural law governing whether in any particular instance it is appropriate for determination by the court or whether its existence hinges on questions of fact determinable only by a jury.[6]

### Substantive Scope of Qualified Immunity Defense

■ Qualified immunity shields government officials performing discretionary functions from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

5. Plaintiffs contend that the above cases have been "implicitly overruled" by the Supreme Court in *Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In *Leatherman,* the Court, reversing the dismissal of a § 1983 action for failure to adequately train police officers brought against a county and two municipal corporations, ruled that heightened pleading standards required by some circuits in § 1983 actions against municipalities conflict with the "liberal system of 'notice pleading' set up by the Federal rules." *Leatherman,* 507 U.S. at 163, 113 S.Ct. at 1163. However, *Tuttle,* 471 U.S. 808, 105 S.Ct. 2427 (1985), and *Canton,* 489 U.S. 378, 109 S.Ct. 1197 (1989), do not address pleading required but rather what must be proven in order to establish municipal liability. *Leatherman,* which was decided on a 12(b)(6) dismissal for failure to state a claim, actually undermines plaintiffs' position on this issue, for the Supreme Court there noted that in the absence of an amendment to the Federal Rules permitting an heightened pleading requirement in § 1983 actions against municipalities, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman,* 507 U.S. at 168–69, 113 S.Ct. at 1163. Defendants here have moved for summary judgment thus plaintiffs must do more than restate unsupported allegations to survive summary judgment.

6. See, e.g., Charles W. Thomas, *Resolving the Problem of Qualified Immunity for Private Defendants in § 1983 & Bivens Damage Suits,* 53 La. L.Rev. 449 (1992); Note, *Qualified Immunity and the Allocation of Decision–Making Functions Between Judge and Jury,* 90 Col.L.Rev. 1045 (1990); Note, *Qualified Immunity for Civil Rights Violations: Reforming the Standard,* 75 Cor.L.Rev. 462 (1990).

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Moreover, an official is not liable after violating clearly established law if he could claim "extraordinary circumstances" and "prove that he neither knew nor should have known of the relevant legal standard." *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738. Whether or not a defendant is entitled to qualified immunity turns on the objective—"albeit fact specific—question of whether a reasonable officer could have believed his actions to be lawful, in light of clearly established law and the information he possessed." *Creighton,* 483 U.S. at 641, 107 S.Ct. at 3040.[7]

### Plaintiffs False Arrest, False Imprisonment, Abuse of Process and Malicious Prosecution Claims.

"An arresting officer is entitled to qualified immunity in a suit for damages on a claim for arrest without probable cause[8] if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven,* 950 F.2d 864, 869 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). There is probable cause when the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989). To be entitled to summary judgment on this defense, the officials must adduce specific facts that no reasonable jury, looking to the evidence in the light most favorable to, and drawing inferences most favorable to, the plaintiff could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist. See *Golino,* 950 F.2d at 870.

In the present case, Demore, before and during the course of a car chase, had at least three opportunities to observe the driver of the car.[9] He described the driver and the passenger, both of whom he had also witnessed outside of their vehicle, to Fennell and Serrette. Fennell, who found the abandoned vehicle shortly after Demore lost sight of it, was told by a passing motorist that its occupants had just fled around the corner.[10] Turning that corner, he saw two individuals fitting the descriptions of the driver and passenger provided Demore. Fennell attempted to question the individuals and a struggle ensued. Demore and Serrette assisted Fennell in arresting plaintiffs; Demore identified plaintiffs as the individuals in the vehicle.

---

**7.** In *Creighton,* 483 U.S. 635, 107 S.Ct. 3034, plaintiffs alleged that they were subjected to a warrantless search in violation of their constitutional rights. The Court of Appeals for the Eighth Circuit held that defendants were not entitled to qualified immunity because the right—to be protected from warrantless searches absent probable cause—was clearly established. The Supreme Court reversed, noting that "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow....* [and] *Harlow* would be transformed from a guarantee of immunity into a rule of pleading." *Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038. Instead, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Creighton,* 483 U.S. at 638, 107 S.Ct. at 3038.

**8.** Plaintiffs' false arrest, false imprisonment, abuse of process and malicious prosecution claims are addressed together because the Officers are qualifiedly immune from all claims relating to false arrest if they were not unreasonable in finding probable cause. Further, the lack of probable cause to arrest is an element of each claim as they are understood under § 1983, though this is not necessarily true under state tort law.

**9.** Plaintiffs dispute the length and quality of Demore's opportunities for identification of the suspects. However, plaintiffs offer no evidence whatsoever on this issue, and they do not even argue that these opportunities were insufficient as a matter of law to support a reasonable belief in the existence of probable cause to arrest. Thus, this dispute is not material.

**10.** Plaintiffs dispute the existence of the passing motorist, but they offer no evidence to contradict the testimony of the Officers on this issue.

Plaintiffs contend that the Officers are not entitled to qualified immunity because the Officers were not reasonable in finding probable cause to arrest them. This claim is contradicted by the findings of three separate fact finders: Justice Carey of the County Court, Judge DiBlasi of Mt. Vernon City Court, and the Ferreira Grand Jury. Plaintiffs also contend that the Officers' intent in arresting plaintiffs was to cover up the use of excessive force in apprehending them. Plaintiffs claim that these findings were tainted by the Officers' false testimony, and point to *White v. Frank*, 855 F.2d 956 (2d Cir.1988). *White* held that although a grand jury indictment is *prima facie* evidence of probable cause to arrest, this can be rebutted by "proof that the defendant misrepresented, withheld or falsified evidence." *White*, 855 F.2d at 956. However, unlike *White*, where the defendant officer admitted in a related corruption probe that he had lied and perjured himself, here plaintiffs have put forth no evidence supporting their claim that the Officers' have testified falsely. Plaintiffs argue that Justice Carey's finding plaintiff Ferreira not guilty in a bench trial is evidence that he did not believe the testimony of the Officers, and they cite comments by him to this effect.[11] However, the different burdens of proof complicate efforts to analogize between criminal and civil trials; in any event, the comments pointed to hardly constitute proof of misrepresentation.

Additionally, plaintiff Silveira, having plead guilty to a charge filed in connection with the underlying set of events, is collaterally estopped from denying the existence of probable cause for his arrest. *Golino v. City of New Haven*, 950 F.2d 864, 868 (2d Cir.1991); *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 183 (2d Cir.), *cert. den.* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991).[12]

Based on the material, undisputed facts in this case, and upon the findings of Justice Carey, Judge DiBlasi and the Ferreira Grand Jury, it cannot be said that it was objectively unreasonable for the Officers to believe that they had probable cause to arrest plaintiffs. Accordingly, the Officers are entitled to qualified immunity for their actions in arresting plaintiffs.

### Plaintiffs' Excessive Force Claims

The fact that it was objectively reasonable for the Officers to believe probable cause existed to arrest plaintiffs does not bar plaintiffs excessive force claims. The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham v. Connor*, 490 U.S.

11. Plaintiffs specifically rely upon an exchange between Judge Carey and A.D.A. Bender on the issue of whether Demore's having viewed single-photos of the plaintiffs before trial, as well as his having seen the plaintiffs at the scene of the arrest, taints his ability at trial to identify the plaintiffs as the individuals he witnessed during the car chase. The issue, as Judge Carey defined it, turns on the question of whether Demore's three chances to identify the plaintiffs during the chase makes him an "independent source." Judge Carey commented, with respect to Demore's identification of the individuals that Serrette and Fennell had apprehended, that "[a]long comes Demore says yeah that one there is the driver. Of course it was police arranged. If you want to apply that slogan...." Nov. 16, 1992 hearing, Judge Carey nevertheless found that applicable New York law governing suppression permitted introduction of Demore's identification at the scene of the arrests since it was part of "one unbroken chain of events," *People v. Duuvon*, 77 N.Y.2d 541, 544–45, 569 N.Y.S.2d 346, 571 N.E.2d 654 (1991), was established by "clear and convincing evidence," *People v. Johnson*, 157 A.D.2d 802, 550 N.Y.S.2d 404 (2d Dep't 1990), and compared favorably in time and lighting conditions with similar identifications permitted in *People v. Dixon*, 158 A.D.2d 467, 550 N.Y.S.2d 915 (2d Dep't 1990), and *People v. Rosario*, 155 A.D.2d 563, 547 N.Y.S.2d 418 (2d Dep't 1989). Thus, despite *even* the above comments plaintiffs here point to, Judge Carey denied the suppression motion as to Demore's observation of Ferreira at the time of Ferreira's arrest. *People v. Ferreira*, Decision/Order, Inc. # 92–395.

12. Plaintiffs contend that *Dory v. Ryan*, 25 F.3d 81 (1994) supports the contrary position. However, in *Ryan* the Second Circuit, on rehearing, partly reversed a cert. *sua sponte* dismissal of a complaint in ruling that a police officer witness, unlike a prosecutor, was not entitled to *absolute* immunity for his alleged role in an extra-judicial conspiracy. Thus, *Ryan* is not applicable to this case, which deals with the issue of qualified immunity.

386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The reasonableness of the force used is judged from the perspective of a reasonable officer at the scene. *Finnegan v. Fountain*, 915 F.2d 817 (2d Cir.1990). This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Soares v. Connecticut*, 8 F.3d 917, 921 (2d. Cir.1993), citing *Connor*, 490 U.S. at 396, 109 S.Ct. at 1871–72.

■■■■■ Mere allegations that one was subjected to excessive force do not preclude a finding that qualified immunity is available as a matter of law on this issue, since "to say that the use of constitutionally excessive force violates a clearly established right ... begs the open question whether the particular degree of force under the particular circumstances was excessive." *Fountain*, 915 F.2d at 823. Constitutionally excessive use of force may not be objectively unreasonable under *Harlow*, supra, because it may not have been apparent to the officer that his use of force violated clearly established law. However, where there is a dispute as to the amount of force, not merely a dispute over the objective reasonableness of a use of force, and the record could support a finding that the amount was objectively unreasonable under the circumstances, there is a question of fact for trial.

Here, plaintiffs testified that they did not resist arrest but were nevertheless kicked and otherwise struck by the Officers. Thus, the record, when viewed in the light most favorable to the opponent of the motion for summary judgment, permits an inference that the Officers not only used constitutionally excessive force but also should have been aware that they were doing so. Defendants claim that plaintiffs have not introduced any evidence that the force used to effect their arrests was excessive or unreasonable. However, unlike plaintiffs' unsupported allegations regarding the Officers' testimony as to the events preceding plaintiffs' arrests, plaintiffs on this issue have first hand knowl-edge of the facts. Furthermore, it is undisputed that plaintiffs were taken to a hospital some time after being arrested, and plaintiffs have supported their allegations with a photograph ostensibly evidencing Ferreira's injuries. Therefore, because the facts material to this issue are themselves in dispute, summary judgment is inappropriate.

## C. Plaintiffs' Pendent State Claims

Plaintiffs in this action bring state as well as federal claims. Federal Courts sitting in federal question jurisdiction have pendent jurisdiction over state claims arising out of the same nucleus of operative facts as the federal claims upon which original jurisdiction is based. 28 U.S.C. § 1367. Because we grant summary judgment only as to some of the federal claims, the Court retains pendant jurisdiction over plaintiffs' state-law tort claims.

### Silveira Guilty Plea

■■■■ Defendants contend plaintiff Silveira is estopped from bringing false arrest, false imprisonment, abuse of process and malicious prosecution claims because he pleaded guilty to a disorderly conduct charge filed in connection with the underlying set of events. Plaintiffs contend first that false testimony by the Officers, allegedly recognized by Justice Carey and evidenced by Ferreira's being found not guilty, rebuts a presumption of probable cause; and, second, that the fact that the officers "agreed with each other (sic) to untruthfully identify the plaintiff" creates an actionable conspiracy. In fact, plaintiffs have presented no evidence of any actionable conspiracy and applicable law does bar plaintiff Silveira from bringing both federal and state claims relating to false arrest.

Plaintiffs' point to *Dory v. Ryan*, 25 F.3d 81 (2d. Cir.1994), in arguing that the alleged fact that the Officers' agreed with one another "to untruthfully identify the plaintiff" makes this an actionable conspiracy. There, an inmate filed a pro se § 1983 complaint against a prosecuting attorney and police officer witness alleging that they conspired to convict him based on perjured testimony. The action was supported by a trial witness's affidavit stating that Ryan, the assistant district attorney, had coerced the witness to

commit perjury. The Second Circuit, on rehearing, ruled that the police officer, unlike the prosecutor, was not entitled to *absolute* immunity for his alleged role in an extrajudicial conspiracy and thus that the action against the officer should not have been dismissed *sua sponte*. However, the court emphasized that its ruling turned on the procedural posture of the case, and that "further evaluation of the merit of Dory's claims will have to await future proceedings." *Ryan*, 25 F.3d at 84. Because plaintiffs here present no evidence of a conspiracy and because this case is at the summary judgment stage, *Ryan* is not relevant.

Although plaintiffs claim that they have rebutted any presumption of probable cause created by Silveira's guilty plea, the Second Circuit has held that "[w]here [a] civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Cameron v. Fogarty*, 806 F.2d 380, 388 (2d Cir.1986).[13] Thus, we dismiss Silveira's false arrest, false imprisonment, abuse of process and malicious prosecution claims. Under *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975), a conviction which survives appeal is an absolute bar to false arrest, false imprisonment and malicious prosecution claims. Silveira has not overturned his conviction, and so we dismiss these claims.

## CONCLUSION

The Court grants summary judgment in favor of defendant the County on all § 1983 claims and in favor of defendants the Officers on all § 1983 claims other than those for excessive force. Further, the Court grants summary judgment against plaintiff Silveira on his state-law tort claims for false arrest, false imprisonment and malicious prosecu-

tion. The Court denies summary judgment on plaintiffs' remaining state-law tort claims.

**SO ORDERED.**

---

**13.** There the court based its decision not on principles of collateral estoppel relating to the necessary determination of probable cause to arrest incidental to a proper conviction for a crime following arrest, but instead on common law principles with respect to false arrest, false imprisonment and malicious prosecution that it found Congress incorporated into § 1983. In finding that Congress intended such common law principles to be incorporated into § 1983, *Fogarty* expressly rejected the argument that such principles are inconsistent with the policy behind this act.