Ernesto **VELASQUEZ**, Plaintiff,

v.

The **CITY OF NEW YORK**, P.O. Thomas Veale (Shield # 1579); P.O. Richard Brotchal (Shield # Unknown); P.O. Scott Nager (Tax ID # 874977); and P.O. Tony Trinidad (Tax ID # 896055), Defendants.

No. 95 Civ. 9693 (SAS) (JCF).

United States District Court,
S.D. New York.

April 11, 1997.

Seth A. Harris, Burns & Harris, New York City, for Plaintiff.

Andrew A. Jones, Assistant Corporation Counsel, New York City, for Defendants.

### MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

Ernesto Velasquez brings this action pursuant to 42 U.S.C. § 1983 alleging that his rights under the Fourth and Fourteenth Amendment to the United States Constitution were violated during the course of his arrest on January 24, 1995 and the ensuing criminal prosecution. The plaintiff asserts claims of false arrest, use of excessive force, and malicious prosecution both as constitutional torts under § 1983 and as violations of state common law. He has named as defendants New York City Police Officers Thomas Veale, Richard Brotchul, Antonio Trinidad,

and Scott Nager as well as the City of New York (the "City"). The parties have consented to referral of this case to me pursuant to 28 U.S.C. § 636(c) for all purposes including trial. The defendants now move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

*Background*

According to the complaint, on January 24, 1995 at about 10:30 p.m., Mr. Velasquez was in the vicinity of Sherman Avenue and Broadway in Manhattan. At that time the defendant police officers assaulted him and, without probable cause, arrested him for criminal possession of a controlled substance in the seventh degree, a class A misdemeanor. N.Y. Penal Law § 220.03. The prosecution proceeded until October 3, 1995, when it was dismissed for failure to comply with the speedy trial requirements of New York Criminal Procedure Law § 30.30.

All defendants now move for partial summary judgment with respect to the claims of malicious prosecution on the ground that the criminal proceedings did not terminate favorably to the plaintiff. They argue that, as a matter of law, a dismissal on speedy trial grounds is not a favorable termination and thus can never be the basis for a malicious prosecution claim. Mr. Velasquez responds that such a dismissal is necessarily favorable to him since it irrevocably terminated the prosecution and left intact the presumption of innocence to which he was entitled.

The defendants also move for summary judgment dismissing the plaintiff's § 1983 claims against the City. They argue that Mr. Velasquez cannot demonstrate that any of the alleged violations of his rights were caused by any policy or custom of the City. The plaintiff contends that he can show that the City displayed deliberate indifference to his rights by ignoring evidence of prior misdeeds by the defendant police officers and by failing to train them properly.

*Discussion*

### A. Malicious Prosecution

 Section 1983 imposes a form of tort liability on persons acting under color of state law who violate federal constitutional or statutory rights. *See Heck v. Humphrey,* 512 U.S. 477, 482–83, 114 S.Ct. 2364, 2370, 129 L.Ed.2d 383 (1994). Malicious prosecution was long considered actionable as a constitutional tort, generally because it was viewed as implicating Fourteenth Amendment liberty interests. *See Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994). However, in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court held that for malicious prosecution to be the basis for a § 1983 claim, it must be based on the deprivation of a specific constitutional right rather than on the general concept of substantive due process. *Id.* at 271–72, 114 S.Ct. at 812. One such specific right is the Fourth Amendment safeguard against unreasonable search and seizure. *Id.* at 269–71, 114 S.Ct. at 811; *see Singer v. Fulton County Sheriff,* 63 F.3d 110, 115 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Therefore, when malicious prosecution constitutes a seizure of the plaintiff, it is actionable as a constitutional tort.

 When analyzing a § 1983 claim, courts look to the common law to determine whether conduct is tortious. *See Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995) (state law governs § 1983 malicious prosecution claim).[1] In order to prove a claim for malicious prosecution under New York law, a plaintiff must establish that: (1) an action was initiated by the defendant against the plaintiff; (2) the defendant acted with malice; (3) there was no probable cause for commencing the action; and (4) the action terminated in favor of the plaintiff. *See O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996); *Russell,* 68 F.3d at

---

1. In discussing the application of common law to a constitutional tort in *Heck v. Humphrey,* the Supreme Court never referred to specific decisions of the courts of Indiana, the state in which the claim arose. Rather, the Court alluded to general principles of tort law and cited learned treatises and caselaw from a variety of jurisdictions. 512 U.S. at 483–87, 114 S.Ct. at 2371–72.

This may signal that the common law to be applied under § 1983 should be derived from universal tort principles rather than from the law of a particular state. However, the instant case is controlled by Second Circuit precedent, which has consistently applied New York law to constitutional torts arising from conduct in this state.

36; *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1249–50 (1983). The only dispute for purposes of summary judgment concerns the element of favorable termination.

A comprehensive definition of this element has proven elusive. *See O'Brien*, 101 F.3d at 1486 (noting confusion in the case law); *Lopez v. City of New York*, 901 F.Supp. 684, 688 (S.D.N.Y.1995) ("Unfortunately, the cases dealing with the pertinent situations have reached varying results that are difficult to reconcile."). The New York Court of Appeals first formulated a general definition of the favorable termination requirement in *Halberstadt v. New York Life Insurance Co.*, 194 N.Y. 1, 10–11, 86 N.E. 801, 803 (1909):

> The first [rule] is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court, there is no such [favorable] termination. . . .

According to this version of the general rule, the requirement of a favorable termination can be met either by "(1) an adjudication of the merits by the tribunal in the prior action, or (2) an act of withdrawal or abandonment on the part of the party prosecuting the prior action." *O'Brien*, 101 F.3d at 1486.

As the Second Circuit recently stated in *O'Brien*, however, cases subsequent to *Halberstadt* "cast doubt on the viability of the second of these two methods—that is, the abandonment prong—of proving favorable termination." *Id.* Cases such as *Hollender v. Trump Village Cooperative, Inc.*, 58 N.Y.2d 420, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983),

focused solely on the first method. In that case, the court stated that the burden of proving favorable termination could be met "only when [the] . . . final disposition is such as to indicate . . . innocence." *Id.* at 425–26, 461 N.Y.S.2d at 768, 448 N.E.2d at 435 (quotation and citation omitted). A termination that left open the question of the plaintiff's guilt could not, under this analysis, be considered a favorable termination. *Id.* at 426, 461 N.Y.S.2d at 768, 448 N.E.2d at 435. Most recently, the New York Court of Appeals seemed to endorse this narrower approach in *MacFawn v. Kresler*, 88 N.Y.2d 859, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996). There, it stated that "[a] criminal proceeding terminates favorably to the accused, for purposes of a malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence." *Id.* at 860, 644 N.Y.S.2d at 486, 666 N.E.2d at 1359.

The Second Circuit has sometimes articulated the standard in this way. In *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980), for example, the Court reasoned that "[p]roceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Id.* at 193 (citation omitted). Similarly, in *Hygh v. Jacobs*, 961 F.2d 359, 368 (2d Cir. 1992), the Court found that a termination that left unanswered the question of guilt or innocence could not be considered favorable to the plaintiff.

In virtually all of these cases, however, the facts were such that the plaintiff was unable to meet *either* prong of the *Halberstadt* test. In *Hollender* and *Singleton*, the prosecutions terminated when the accused accepted an adjournment in contemplation of dismissal (an "ACD"). As the Court noted in *Singleton*, an ACD involves the consent of both the prosecution and the accused, and thus resembles a settlement rather than an abandonment of the case by the prosecution. 632 F.2d at 193. In *MacFawn*, the trial court had dismissed a criminal information as legally insufficient. However, because new charges could be brought (though they had not been), the prosecution could not be deemed abandoned. 88 N.Y.2d at 860, 644

N.Y.S.2d at 486, 666 N.E.2d at 1359. Thus, it cannot be inferred from these cases that the abandonment test in *Halberstadt* has for all purposes been eliminated.[2]

Further guidance may be gleaned from how the courts have treated specific types of terminations. There is no doubt that some prosecutions conclude in a manner that is categorically favorable to the accused. "An acquittal is the most obvious example of a favorable termination." *Russell*, 68 F.3d at 36. Conversely, certain types of disposition may never, as a matter of law, be considered as favorable termination for purposes of a malicious prosecution claim. That is the case with an ACD because it involves the accused's acquiescence in what is analogous to a sentence of probation. *See Singleton*, 632 F.2d at 193–94.

Other dispositions are more ambiguous. "In many instances, . . . criminal proceedings are terminated in a manner that does not establish either guilt or innocence. In the absence of a decision on the merits, the plaintiff must show that the final disposition is indicative of innocence." *Russell*, 68 F.3d at 36 (citations omitted). Dismissals in the interest of justice are illustrative. Second Circuit cases have held that such a dismissal does not "as a matter of law" constitute a favorable termination. *See Singer*, 63 F.3d at 118; *Hygh*, 961 F.2d at 368. Yet a recent decision by an intermediate appellate court in New York indicates that while such a dismissal is not on its face favorable to the accused, a plaintiff in a malicious prosecution action is nonetheless entitled to demonstrate that the dismissal was granted because the charges against him were meritless. *Hankins v. Great Atlantic & Pacific Tea Co.*, 208 A.D.2d 111, 115–16, 622 N.Y.S.2d 678, 680–81 (1st Dep't 1995). Citing *Hankins*, the Second Circuit has acknowledged that New York law may permit a dismissal in the interest of justice to constitute a favorable termination in certain instances. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1154 (2d Cir.1995).

However uncertain New York law may be with respect to dismissals in the interest of justice, it has generally treated dismissals for violation of speedy trial requirements as favorable terminations, beginning with the decision in *Reit v. Meyer*, 160 A.D. 752, 146 N.Y.S. 75, 78–79 (1st Dep't 1914) (favorable termination where accused obtained dismissal of criminal charges because district attorney unprepared to proceed). In *Loeb v. Teitelbaum*, 77 A.D.2d 92, 432 N.Y.S.2d 487 (2d Dep't 1980), the Appellate Division, Second Department adopted the reasoning of *Reit*. It noted that "[t]here, a dismissal for failure to prosecute granted on motion of the accused was deemed a favorable termination because the prosecutor previously had indicated an intent to seek dismissal of the indictment and thus to abandon the prosecution." *Id.* at 100, 432 N.Y.S.2d at 493. The court went on to reason as follows:

> *Reit* is consistent with the Restatement view that formal abandonment of a criminal proceeding by the public prosecutor constitutes a favorable termination (Restatement Torts 2d, § 659(c)) because it implies a lack of reasonable ground for the prosecution. If, however, the prosecutor's abandonment is procured by an agreement or compromise with the accused, misconduct on the part of the accused which effectively compels the abandonment, invocation of mercy by the accused, or the impossibility of bringing the accused to trial, it must be deemed "indecisive" and not a favorable termination.

*Id.* at 100–01, 432 N.Y.S.2d at 493 (citations omitted). In *Lenehan v. Familo*, 79 A.D.2d 73, 436 N.Y.S.2d 473 (4th Dep't 1981), the Appellate Division, Fourth Department provided a further rationale for treating the speedy trial dismissal in that case as a favorable termination:

> The criminal charge was dismissed on the unopposed motion of plaintiff and there is no evidence to indicate any misconduct or other impropriety on plaintiff's part in seeking the dismissal. He exercised a statutory right founded upon the unex-

---

**2.** In *Hygh*, the Court held that, as a matter of law, a dismissal "in the interest of justice" was not a favorable termination. 961 F.2d at 368. This determination is at odds with the *Halber-* *stadt* formulation, but, as will be discussed below, it may no longer be an accurate characterization of state law.

plained and unexcused failure of the People to pursue the prosecution. Ordinarily, when the termination of the criminal prosecution has been procured by the accused, an action for malicious prosecution will not lie. That rule is not applicable, however, where the termination was brought about as a matter of right and without fraud, deception or other misconduct on the part of the accused.

*Id.* at 76, 436 N.Y.S.2d at 475 (citations omitted). The court went on to reason that although the tort of malicious prosecution should not be permitted to chill criminal prosecution, "that societal interest does not extend so far as to compel one charged with a criminal offense to waive his constitutional or statutory right to a speedy trial in order to preserve his right to civil retribution for a demonstrated wrong." *Id.* at 77, 436 N.Y.S.2d at 476 (citation omitted).

Other New York state cases accept as well-established the principle that a speedy trial dismissal is a favorable termination. *See, e.g., Vitellaro v. Eagle Insurance Co.,* 150 A.D.2d 770, 771, 541 N.Y.S.2d 614, 615 (2d Dep't 1989) (speedy trial dismissal "has been held to constitute a favorable termination because it implies a lack of reasonable ground for the prosecution"); *Brown v. Town of Henrietta,* 118 Misc.2d 133, 135–36, 459 N.Y.S.2d 996, 998–99 (Sup.Ct. Monroe Co.1983) (dismissal in furtherance of justice was in reality a speedy trial dismissal and therefore a favorable termination). The only exception is the case relied upon by the defendants here, *Witcher v. Children's Television Workshop,* 187 A.D.2d 292, 589 N.Y.S.2d 454 (1st Dep't 1992). There the court held that a malicious prosecution claim was legally insufficient because the plaintiff failed to allege the basis for dismissal of the criminal action. Id. at 294, 589 N.Y.S.2d at 456. In addition, the court opined in dicta that the *Loeb* case was inconsistent with prior precedent including *Halberstadt* and with subsequent cases such as *Hollender.* *Id.* at 294–95, 589 N.Y.S.2d at 456.

Without a clearer indication from the New York Court of Appeals, however, it is impossible to say that a speedy trial dismissal may no longer be considered a favorable termination under any circumstances. Such a categorical rule would be inconsistent with the treatment of such dismissals by most New York courts. Furthermore, as noted above, *Hollender* would not dictate such a result, since it did not purport to vitiate the abandonment prong of the *Halberstadt* analysis and since, in any event, it did not involve a prosecution that was terminated by abandonment.

The federal courts in this circuit have been divided with respect to the treatment of speedy trial dismissals. Some have taken the position that such dismissals may not constitute a favorable termination under any circumstances. *See Woo v. City of New York,* No. 93 Civ. 7007, 1996 WL 457337, at *7–8 (S.D.N.Y. Aug.14, 1996); *Rodriguez v. State of New York,* No. 95 Civ. 3639, 1996 WL 197749, at *2 (S.D.N.Y. April 23, 1996); *Covington v. City of New York,* No. 94 Civ. 3382, 1995 WL 322222, at *3–4 (E.D.N.Y. May 23, 1995). Others have held that the beneficiary of such a dismissal must be permitted to demonstrate that it was motivated by the absence of any reasonable basis for prosecution. *See Marino v. Mobilia,* Nos. 94 CV 5003, 95 CV 0197, 1996 WL 748353, at *3 (E.D.N.Y. Dec.11, 1996); *Davis v. New York City Police Officers,* No. 93 Civ. 7963, 1996 WL 54358, at *1–2 (S.D.N.Y. Feb.8, 1996); (discussing abandonment of charges in context of plea to lesser charges); *Murphy v. Lynn,* 903 F.Supp. 629, 631 (S.D.N.Y.); *Baasch v. Reyer,* 827 F.Supp. 940, 943 (E.D.N.Y.1993) (noting plaintiff's favorable termination argument but dismissing complaint on other grounds); *Wallace v. Hano,* No. 90 Civ.2064(WK), 1992 WL 230139, at *4 (S.D.N.Y. Sept.3, 1992). This second line of cases better reflects the current status of state law.

In addition, strong policy interests favor the treatment of speedy trial dismissals as potentially favorable. The party who has intentionally initiated a meritless criminal proceeding should not be immunized from civil liability merely because the case was permitted to languish until it ran afoul of speedy trial requirements.

In *Lopez,* the court noted contrary considerations. First, it suggested that treating a

speedy trial dismissal as favorable could encourage a prosecutor to proceed with a flawed case rather than abandon it and face a malicious prosecution action. *Lopez,* 901 F.Supp. at 689–90. But the risk of a civil action would be greater if a meritless charge were tried and resulted in an acquittal, which is incontestably a termination favorable to the accused. Moreover, a prosecutor wishing to obtain protection against tort actions while providing an accommodation to the accused can secure a release from any civil liability. *See Town of Newton v. Rumery,* 480 U.S. 386, 394–97, 107 S.Ct. 1187, 1192–94, 94 L.Ed.2d 405 (1987) (agreements dismissing criminal charges in return for release from civil liability not invalid *per se* ). Second the court in *Lopez* questioned whether it would be desirable to expose prosecutorial decision-making to the process of discovery in a civil action. 901 F.Supp. at 690. Yet, litigation costs, including those related to discovery, will be incurred any time that a categorical rule is rejected in favor of a case-by-case analysis. And, to the extent that a dismissal is based on a speedy trial violation, the prosecutor's thought processes will be subject to discovery only to a limited extent. On balance, the public interest in vindicating the civil rights of a person falsely accused of a crime outweighs concerns about burdening the law enforcement system. This leads to a conclusion consistent with that reached by the majority of the New York state cases: a speedy trial dismissal may be considered a favorable termination for purposes of a malicious prosecution action where there is evidence that the criminal charges were abandoned because they lacked merit.

■ Unlike an acquittal on one hand or a conviction on the other, then, a dismissal on speedy trial grounds does not on its face indicate whether the termination is favorable. "When a termination is indecisive because it does not address the merits of the charge, the facts surrounding the termination must be examined to determine whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Janetka v.*

*Dabe,* 892 F.2d 187, 189 (2d Cir.1989) (quotation omitted). The burden of proffering such facts is on the plaintiff. *See Hygh,* 961 F.2d at 367 ("A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law."); *Brawer v. Carter,* 937 F.Supp. 1071, 1080 (S.D.N.Y.1996) (summary judgment for defendants where plaintiff failed to submit proof of favorable termination).

■ In this case, neither party has submitted any evidence concerning the circumstances surrounding the dismissal of charges against Mr. Velasquez. Had the defendants moved for summary judgment on the basis that the plaintiff was unable to prove a favorable termination as a factual matter, they may have prevailed. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). However, the defendants here did not point to an absence of evidence probative of the plaintiff's claim that the prosecution was baseless. Rather, they argued exclusively that as a matter of law a speedy trial dismissal cannot be a favorable termination. Thus, the only facts they cite as uncontested are that Mr. Velasquez was arrested and charged and that the charges were dismissed on speedy trial grounds. Defendants' Statement Pursuant to Local Rule 3(g). Accordingly, the facts underlying the termination remain at issue, and summary judgment must be denied. *See Rounseville v. Zahl,* 13 F.3d 625, 629 (2d Cir.1994).[3]

### B. *Municipal Liability*

The defendants also move for summary judgment with respect to the claims asserted

---

**3.** The parties also have yet to address the circumstances of Mr. Velasquez's custody prior to the dismissal of the charges. Since the malicious prosecution claim under § 1983 is grounded in

the Fourth Amendment, at trial the plaintiff must "show some deprivation of liberty consistent with the concept of 'seizure.' " *Singer,* 63 F.3d at 116.

against the City. A municipality may only be held liable under § 1983 if it has caused the constitutional violation at issue through a municipal policy or custom. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). The doctrines of respondeat superior and vicarious liability cannot be used to impose liability on a municipality for the acts of its lower-level employees. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

█ A plaintiff need not, however, demonstrate that the municipality had a formal rule or regulation that caused the constitutional deprivation. *See Vann,* 72 F.3d at 1049; *Villante v. Department of Corrections,* 786 F.2d 516, 519 (2d Cir.1986). Rather, the plaintiff may establish a policy or custom by demonstrating that the municipality was alerted to the possibility that its employees were engaged in constitutional violations but responded with deliberate indifference. *Vann,* 72 F.3d at 1049; *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326–27 (2d Cir. 1986). Such deliberate indifference may be inferred from a failure to supervise: from proof of repeated complaints of constitutional violations that "are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann,* 72 F.3d at 1049 (citations omitted).

█ Alternatively, a municipality can be found liable under § 1983 for a failure to train its employees:

[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*City of Canton,* 489 U.S. at 390, 109 S.Ct. at 1205. In this case, it is not altogether clear whether the plaintiff is basing his claims against the City on a failure to supervise or a

failure to train. Under either theory, he has failed to proffer sufficient evidence to survive summary judgment.

█ The plaintiff relies exclusively on the record of purported misconduct of the individual defendants.[4] He argues that based on that record, the City displayed deliberate indifference by failing to train or retrain the officers. The record fails to support the plaintiff's argument.

The plaintiff notes that defendant Antonio Trinidad was charged with sexual abuse by his wife's cousin. However, a departmental hearing was held and Officer Trinidad was exonerated. Therefore, not only did the police department take appropriate steps to investigate the allegations, but it also determined that the charges were unfounded. Thus, this incident hardly warranted additional training or supervision.

Next, the plaintiff alleges that defendant Scott Nager "has had 3 or 4 lawsuits brought against him during the past 15 years for actions that may involve police brutality and excessive force. In addition, he testified that he has had between 5 and 10 prior complaints of [sic] the Civilian Complaint Review Board." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment at 12. However, the plaintiff has provided no deposition transcript or other evidence that supports these assertions. Nor has he supplied any information about the nature of any claims against Officer Nager or their disposition. At best, he speculates that the lawsuits "may" have involved police brutality. The plaintiff does proffer one solid charge concerning this defendant: in 1989 Officer Nager was suspended for covering the numbers on his badge to conceal his identity during a civil disturbance. This isolated incident did not demonstrate a propensity for violence, however, and the police department pursued disciplinary proceedings appropriately. Again, there is no basis for arguing deliberate indifference by the City of New York.

Finally, the plaintiff argues that defendant Richard Brotchal was twice investigated for

---

**4.** The plaintiff, however, does not allude to defendant Thomas Veale at all in responding to the summary judgment motion.

discharging his firearm, once in an off-duty incident in 1989 when he fired five rounds. That shooting occurred, however, when a suspect that Officer Brotchal was pursuing turned and aimed a gun at him. The plaintiff has provided no evidence that would indicate that Officer Brotchal's actions were reckless or would justify retraining.

■ None of the individual defendants, then, had a demonstrated history of violence or misconduct that should have triggered remedial action by the City. *See Covington v. City of New York*, 916 F.Supp. 282, 290 (S.D.N.Y.1996) (plaintiff failed to allege any concrete fact supporting failure to train theory); *cf. Robert G. v. Newburgh City School District*, No. 89 Civ. 2978, 1990 WL 3210, at *1 (S.D.N.Y. Jan.8, 1990) (motion of school district to dismiss denied where school employee who assaulted student had record of violent felonies and had twice previously assaulted another student). Nor has the plaintiff pointed to a pattern of misconduct within the police department that would suggest a need for retraining. As the Supreme Court recognized in *City of Canton*, 489 U.S. at 390 n. 10, 109 S.Ct. at 1205 n. 10, "[i]t could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need." But the plaintiff has made no showing whatsoever that the constitutional deprivations that he was allegedly subjected to are commonly perpetrated by New York City police officers. *See Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996) (no allegation that misconduct was widespread or persistent); *Ferreira v. Westchester County*, 917 F.Supp. 209, 215 (S.D.N.Y. 1996) (no allegation of similar incidents). Indeed, the plaintiff has proffered no evidence of the training the individual defendants did have, how they might have been trained differently, or the nature of their supervision on the job. "[A]dequately trained officers occasionally make mistakes: the fact that they lo says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206. Thus, even if the plaintiff had demonstrated that the defendants' records indicated a need

for retraining or a heightened level of supervision, he has failed to show that adequate training and supervision were not provided. *See Ferreira*, 917 F.Supp. at 215–16 ("[P]laintiffs must do more than show the need for training on this issue; they must show how a particular policymaker's specific choice with respect to the training deficiency at issue reflects 'deliberate indifference' to their constitutional rights, and how this indifference caused their injuries."). The City is therefore entitled to summary judgment.

*Conclusion*

For the reasons set forth above, the defendants' motion for partial summary judgment is denied insofar as it sought dismissal of the plaintiff's malicious prosecution claims and granted to the extent that the claims against the City are dismissed.

SO ORDERED.