ELLIOT LOEB et al., Appellants-Respondents, v CARL TEITEL-
BAUM, Also Known as CARL BAUM, et al., Respondents-
Appellants, et al., Defendant.

Second Department, October 22, 1980

## APPEARANCES OF COUNSEL

*Duer & Taylor (Arthur E. McInerey* and *John S. Chapman, Jr.,* of counsel), for appellants-respondents.

*Lester Schwab Katz & Dwyer (Patrick A. Lyons* and *Steven B. Prystowsky* of counsel), for respondents-appellants.

## OPINION OF THE COURT

LAZER, J.

The parties to this malicious prosecution action cross-appeal from portions of a posttrial order which (1) set aside a verdict in the sum of $150,000 compensatory and $200,000 punitive damages in favor of the plaintiff Elliot Loeb unless he

stipulated to reductions to $50,000 and $25,000, respectively, and (2) set aside a verdict in the sum of $100,000 compensatory and $200,000 punitive damages in favor of the plaintiff's decedent Victor Sauers (referred to within as a plaintiff), unless he stipulated to reductions to $35,000 and $25,000, respectively. The defendants appeal from the order to the extent that it denied their posttrial motion to dismiss the complaint for failure to establish a prima facie case for malicious prosecution, failed to set aside the verdict in toto, failed to set it aside as against the weight of the credible evidence, and submitted the question of punitive damages to the jury. They also seek review of an intermediate order made at Special Term (GREENSPUN, J.) insofar as it denied their motion for summary judgment on the ground that the dismissal of the underlying criminal action for failure to prosecute was "as a matter of law" a termination favorable to the plaintiffs sufficient to support the action for malicious prosecution. The plaintiffs' appeal is from the vacatur of verdicts in their favor. We conclude that the order which granted a new trial as to damages unless plaintiffs stipulated to a reduction of damages should be further modified to the extent of reducing Loeb's damages to $17,500 compensatory and $10,000 punitive and those of Sauers to $15,750 compensatory and $10,000 punitive.

## I

The plaintiffs, Elliot Loeb, a vice-president, secretary, treasurer and director of defendant Vanguard Diversified, Inc. (Vanguard), and Victor Sauers, another Vanguard vice-president (now represented by his executrix), were arrested for criminal trespass of the Vanguard premises after they were purportedly fired from their positions upon being accused of planning a company take-over and removal of defendant Carl Teitelbaum (Baum) as president and chairman of the board. At the trial of the malicious prosecution action, which followed dismissal of the trespass charges, the parties adduced conflicting versions of what had occurred. Loeb testified that on February 17, 1975, in response to a request to do so, he went to defendant Baum's office where the latter and Abraham Tannenbaum, a director and counsel to the corporation, were present. There he was given the choice of signing a letter of resignation as officer and director or being fired. When Loeb replied by expressing a desire to consult with counsel, he was

discharged. Loeb contended that he was unaware that the gathering in Baum's office was to be a board of directors meeting, that he had neither received nor signed any waiver of notice of such a meeting, and that he was given no opportunity to defend himself at it. Baum's version of the same events was that a board of directors meeting was called at Vanguard's office at which Loeb and Tannenbaum attended as directors. Baum told Loeb that he was cognizant of the ouster plot and offered him an opportunity to resign. When Loeb declined, declaring he wished to consult counsel, Baum informed him that he was fired. Loeb never protested the propriety of the meeting and, in fact, entered into a discussion of severance pay after being notified of his termination.

Sauers' testimony as to the events of February 17, 1975 is uncontradicted. He was called to Baum's office where the latter and Tannenbaum were present and asked whether he wanted to leave employment together with Loeb. Sauers requested and was given time to think it over.

According to the minutes of the alleged board of directors meeting of February 17, after Loeb left the meeting, Baum was authorized to terminate the employment of any of the persons who had participated in the ouster move against him.

The next day, having first consulted with Loeb's lawyer, the plaintiffs arrived together at Vanguard's office at about 11:30 A.M. Loeb's version of what occurred was that Tannenbaum telephoned him twice and instructed him to leave the premises, after which the police arrived and arrested both plaintiffs. Sauers testified that upon his arrival he was called into Baum's office, but when he began to discuss Loeb, Baum ordered him to get out. Baum subsequently came upstairs to Sauers' office and told him he was discharged, to which Sauers retorted that he could not be fired without a board of directors meeting. Shortly afterwards, the police entered his office with Baum who said, "That's the man," and he was placed in handcuffs.

Baum had a different story. When he saw the plaintiffs arrive together that morning, he went to Sauers' office, inquired as to what was going on and was told, "Why don't you stop bothering me." He immediately informed Sauers he was fired and then entreated with Loeb to leave the premises. Upon Loeb's rejection of these requests, Baum sought Tannenbaum's assistance but the latter's telephonic effort failed to convince Loeb to depart. It was then concluded that the only

way to accomplish removal of the two discharged individuals was to call the police, but when the officers who arrived asked the plaintiffs to leave, the response continued to be negative. A similar request from a sergeant who was shortly called to the premises also was refused. At that point, the plaintiffs were arrested, escorted from the building, booked and arraigned. Baum signed a complaint charging them with criminal trespass.

The criminal trespass charges against the plaintiffs originally were set down for trial in the Criminal Court of the City of New York, Kings County, on April 29, 1975. On that date, all of the parties appeared and it was revealed that both Loeb and Sauers had refused the offer of an adjournment in contemplation of dismissal conditioned upon good behavior. Over their objection, the prosecutor requested an adjournment so as to enable him to interview the arresting officers who had been excused from appearing because of the possibility that the matter would be disposed of by the ACD process. The case was set down for May 12, and, over the People's objection, marked final against them despite the fact that it had not been adjourned previously.

On the morning of May 12 the Assistant District Attorney again failed to produce the arresting policemen, of whom one had the day off and the other had just completed his regular tour of duty. The prosecution was given until noon to obtain the officers' presence but when that time arrived and they were still absent the court, *sua sponte,* dismissed the charges for failure to prosecute. All the parties were present at each call of the criminal case, ready and willing to proceed to trial, and none consented to or sought to obtain the dismissal orders. The instant tort action followed the dismissals.

## II

■ Relying on the elemental proposition that termination of the underlying criminal charges favorable to the plaintiff is a prerequisite of any action for malicious prosecution (see *Munoz v City of New York,* 18 NY2d 6), the defendants moved for summary judgment arguing that the dismissals in the Criminal Court could not be deemed to constitute favorable terminations of the charges. The Special Term Justice disagreed, finding "as a matter of law" that the Criminal Court dismissals were favorable terminations. Despite case law which seems to indicate that the denial of a motion for summary judgment

decides nothing beyond the existence of a fact issue (see *Zook v Hartford Acc. & Ind. Co.,* 64 AD2d 701; *Sackman-Gilliland Corp. v Senator Holding Corp.,* 43 AD2d 948; but see Siegel, New York Practice, §448, p 594), it is apparent that the litigants concluded that Special Term's denial established the law of the case, for the defendants raised no issue relative to favorable termination at the trial. The parties now treat Special Term's denial as an intermediate order preserved for appeal, and in their briefs they argue the merits of that determination. Since they have thus charted their own course (see *Cullen v Naples,* 31 NY2d 818; *Stevenson v News Syndicate Co.,* 302 NY 81), we see no reason to deter them from their current effort to seek resolution of the question.

■ We begin our analysis of the favorable termination issue by noting that in the absence of a factual dispute relative to the circumstances of the dismissal, favorable termination is a question for the court (Restatement, Torts 2d, §673), although it becomes one for the jury if there is a factual controversy (see *McNair v Maijgren,* 181 App Div 272). Since no such controversy exists here, our resolution of the question necessarily depends on our view of the law under the circumstances described.

■ The requirement of favorable termination has been a critical element to proof of the tort of malicious prosecution since a very early date (see *Payn v Porter,* [1619] Cro Jac 490; *Anonymous,* YB, [1484] 2 Rich III pl 9) and has been described as "a kind of pre-condition to the later action, the *sine qua non*" (*Munoz v City of New York, supra,* p 10). The requirement has been justified on the grounds of avoiding parallel litigation over the elements of probable cause or guilt (see *Heaney v Purdy,* 29 NY2d 157 [BREITEL, J., dissenting]; *Castrique v Behrens,* 3 E & E 709, 721 [1860-1861]) or of precluding the possibility that the plaintiffs will succeed in the tort action after conviction on the underlying criminal prosecution, in contravention of the strong judicial policy against the creation of two conflicting resolutions of the identical transaction (see *Hauser v Bartow,* 273 NY 370, 375; *Robbins v Robbins,* 133 NY 597, 599; *Fisher v Bristow,* 1 Doug KB 215, 99 Eng Rep 140 [1779]). Our own ultimate question on this issue is whether a dismissal brought about by a prosecutor's failure to prosecute, uninduced by any conduct of the parties, qualifies as a favorable termination.

Despite its antiquity, *Halberstadt v New York Life Ins. Co.*

(194 NY 1), decided in 1909, remains a leading case in New York among the relatively few which deal with favorable termination (see, e.g., *Heaney v Purdy, supra; Zebrowski v Bobinski,* 278 NY 332; *Levy's Store v Endicott-Johnson Corp.,* 272 NY 155; *Keller v Butler,* 246 NY 249; *Schultz v Greenwood Cemetery,* 190 NY 276; *Robbins v Robbins, supra; Marks v Townsend,* 97 NY 590; *Fay v O'Neill,* 36 NY 11; *Chmielewski v Smith,* 73 AD2d 1053; *Matter of Beary v City of Rye,* 59 AD2d 905, revd on other grounds 44 NY2d 398; *Komar v City of New York,* 24 AD2d 941; *Gastman v Myer,* 285 App Div 611; *Sigl, Inc. v Bresnahan,* 216 App Div 634; *Reit v Meyer,* 160 App Div 752; *Weglein v Trow Directory, Print. & Bookkeeping Co.,* 152 App Div 705; *Hinds v Parker,* 11 App Div 327). Halberstadt absconded from Mexico, frustrating the continuance of a criminal proceeding against him there. In dismissing his New York tort action on favorable termination grounds, the Court of Appeals focused on the merits of the criminal proceeding and the complainant's consent to its withdrawal and postulated a two-part rule for resolving the favorable termination question (pp 10-11): "The first one is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of such an action. The underlying distinction which leads to these different rules is apparent. In one case the termination of the proceeding is of such a character as establishes or fairly implies lack of a reasonable ground for his prosecution. In the other case no such implication reasonably follows."

The *Halberstadt* formula—that dismissals on the merits or those resulting from the complainant's conduct in abandoning or consenting to the abandonment of the charges must be deemed favorable terminations, while those resulting from the

agreement, procurement, or improper conduct of the accused cannot be deemed favorable—remained virtually undisturbed until *Heaney v Purdy* (29 NY2d 157, *supra*) in 1971. The *Heaney* court held (p 159) that dismissal of a criminal charge for want of subject matter jurisdiction was so "inconclusive" as to render the purported prosecution illusory. Then, addressing itself to the favorability of a termination that derived from such a dismissal, the court found the literal *Halberstadt* rules to be of limited analytical assistance and relied on their underlying rationale to determine that the dismissal was not favorable. Thus, said the court (29 NY2d, at p 160): "An action may not be maintained if the prior prosecution does not 'fairly impl[y] lack of a reasonable ground for the prosecution' * * * And the prior discharge for want of jurisdiction has no tendency to prove lack of probable cause (Restatement, Torts, § 663, comment *d;* see, also, 52 Am. Jur. 2d, Malicious Prosecution, § 36)." '

We do not perceive *Heaney (supra)* as altering the traditional view enunciated in *Halberstadt* (194 NY 1, *supra*) that some terminations not found to be on the merits of the criminal charges may be deemed favorable if they fairly imply a lack of reasonable ground for the prosecution. *Halberstadt* construed a complainant's abandonment of the charges to imply such a lack of reasonable ground. But neither *Halberstadt* nor *Heaney* dealt with dismissals stemming from the public prosecutor's unadorned failure to proceed. The holding in *Reit v Meyer* (160 App Div 752, *supra*) however, does shed some precedential light upon such a scenario. There, a dismissal for failure to prosecute granted on motion of the accused was deemed a favorable termination because the prosecutor previously had indicated an intent to seek dismissal of the indictment and thus to abandon the prosecution. The argument that the termination should not be deemed favorable to the accused because the criminal complainant had no control over prosecution of the complaint was unavailing since "[the argument] is equally true with respect to the *trial* of an indictment, and yet a verdict of acquittal, or the voluntary abandonment of the prosecution by the People, is * * * a termination of the prosecution favorable to the accused." *(Reit v Meyer, supra,* p 757.)

*Reit (supra)* is consistent with the Restatement view that formal abandonment of a criminal proceeding by the public prosecutor constitutes a favorable termination (Restatement,

Torts 2d, § 659, subd [c]) because it implies a lack of reasonable ground for the prosecution. If, however, the prosecutor's abandonment is procured by an agreement or compromise with the accused (see *Zebrowski v Bobinski,* 278 NY 332, *supra),* misconduct on the part of the accused which effectively compels the abandonment (see *Halberstadt v New York Life Ins. Co.,* 194 NY 1, *supra),* invocation of mercy by the accused (see *Robbins v Robbins,* 133 NY 597, *supra),* or the impossibility of bringing the accused to trial (see *Halberstadt v New York Life Ins. Co., supra),* it must be deemed "indecisive" and not a favorable termination (see Restatement, Torts 2d, § 660, 661). The "indecisive" examples cited obviously do not imply lack of reasonable ground to prosecute. And, by the same reasoning an abandoned prosecution, subsequently revived, also does not imply lack of reasonable ground to prosecute (see *Weglein v Trow Directory, Print. & Bookkeeping Co.,* 152 App Div 705, *supra).*

■ Here, the Criminal Court's *sua sponte* dismissals were based upon the prosecutor's failure to be ready to proceed after a final adjournment had been granted to give him the opportunity to procure the testimony of two police witnesses who were certainly available and whose absence was not excusable. Furthermore, because the opportunity to appeal was left unavailed, any error in the dismissal—even if "gross" (see *Gastman v Myer,* 285 App Div 611, 612, *supra)*—cannot inure to the benefit of the defendants (see *Schultz v Greenwood Cemetery,* 190 NY 276, *supra; Gastman v Myer, supra).* It is undisputed that the dismissals were not procured by the action of the instant parties, all of whom were in court ready to undertake their trial burdens.

While there certainly is a distinction between a voluntary or formal abandonment by a prosecutor and a dismissal brought about by his neglect or unexcused failure to proceed, the difference is more apparent than real, for in both circumstances the criminal charges have been terminated by the prosecutor's nonpursuit of the charges against the accused. In each case, the failure to proceed to the merits compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution.

There is a further cogent reason why the instant dismissals should not redound to defeat the accused's right to a tort remedy. While the traditional tilt of the law has been to favor criminal complainants in order to encourage private persons

to aid in the enforcement of the law (see *Heaney v Purdy,* 29 NY2d 157, *supra;* see, generally, Restatement, Torts [1st & 2d eds], ch 29, introductory note; Prosser, Torts [4th ed], § 119, p 834; 1 Harper and James, Law of Torts, § 4.2; Harper, Malicious Prosecution, False Imprisonment and Defamation, 15 Tex L Rev 157), the societal interest involved cannot extend so far as to compel individuals charged with criminal offenses— and who may desire civil retribution—to resist dismissal of the charges against them in the face of the prosecutor's failure to prosecute and the court's desire to dismiss the complaints. It follows then—contrary to the defendants' contentions—that the discretionary nature of the instant dismissals is not dispositive of the favorable termination issue. Since the termination was not procured by the accused, the distinction between dismissals as of right and those granted as a matter of discretion is analytically irrelevant (cf. *Dorak v County of Nassau,* 329 F Supp 497, affd 445 F2d 1023). We conclude that the criminal charges underlying this case were terminated favorably to the plaintiffs and Special Term's order denying the defendants summary judgment on the issue was proper.

We turn, then, to the remaining liability issues.

### III

██ ██ The four elements of the modern malicious prosecution action are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice *(Broughton v State of New York,* 37 NY2d 451, cert den *sub nom. Schanbarger v Kellogg,* 423 US 929; see, also, *Martin v City of Albany,* 42 NY2d 13). The plaintiffs have established the first two elements, but the third—lack of probable cause for the criminal proceeding—also is vigorously debated. The plaintiffs were required to establish the absence of probable cause as part of their prima facie case (see *Martin v City of Albany, supra; Mulder v U. S. Slicing Mach. Co.,* 228 NY 88; 2 NY PJI 3:50, p 799) because the existence of probable cause bars maintenance of the action *(Burt v Smith,* 181 NY 1, error dsmd 203 US 129). For purposes of the tort of malicious prosecution, probable cause has been defined as "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful

grounds for prosecuting the defendant in the manner complained of" *(Burt v Smith, supra,* p 5) or whether "a discreet and prudent person would be led to the belief that a crime had been committed by the person charged" *(Carl v Ayers,* 53 NY 14, 17; see, also, *Hyman v New York Cent. R. R. Co.,* 240 NY 137). The existence of probable cause must be determined as of the time the prosecution was initiated (see *Rawson v Leggett,* 184 NY 504) on the basis of the facts then known to the defendant or which he reasonably believed from appearances to be true (see *Simpson v Coastwise Lbr. & Supply Co.,* 239 NY 492; *Carl v Ayers, supra; Day v Levine,* 181 App Div 261, affd 228 NY 588; see, generally, 2 NY PJI 3:50, pp 804-807).

■ At the outset of our analysis, we note that the plaintiffs are the beneficiaries of the rule that the appellate court will review the evidence most favorably to the party in whose favor the verdict was rendered and give him the benefit of every inference which may reasonably be drawn from it (see *Lee v Lesniak,* 40 AD2d 756; *Brennan v Concrete Constr. Corp.,* 38 AD2d 639). Furthermore, as to the factual issues, we cannot set the verdicts aside unless we find that they could not have been reached upon any fair interpretation of the evidence (see *Marshall v Mastodon, Inc.,* 51 AD2d 21; *Meizlik v Benderson Dev. Co.,* 51 AD2d 676; *Merced v Harris,* 26 AD2d 523).

■ Implicit in the jury's verdict in favor of both plaintiffs is the finding that no duly convened board of directors meeting took place on February 17 when Loeb and Sauers were discharged as officers and Loeb was terminated as a director. Under the Vanguard by-laws, Loeb and Sauers could have been removed as officers by the board of directors either with or without cause, but, if contrary to Baum's version, no duly convened board of directors meeting occurred on February 17, then Baum had no authority to discharge either of them. Reasoning from the inference to which the jury's verdict entitles the plaintiffs, if Baum knew that the meeting was improperly convened, he knew that his attempted ouster of Loeb and Sauers was fatally defective. Therefore, a reasonable man in Baum's position, and with his knowledge of the facts, could not have been led to the belief that either plaintiff was trespassing on corporate property or that he could institute a trespass proceeding against either of them. Thus, there was sufficient evidence for the jury to have concluded that the

facts that appeared to Baum were otherwise than as he claimed and that the defendants did not have reasonable cause to believe either plaintiff was guilty of criminal trespass.

There is, moreover, an additional reason why Loeb was not a trespasser. The Vanguard by-laws provided that a director of the corporation could be ousted by the board of directors only for cause, a provision which has statutory sanction (Business Corporation Law, § 706, subd [a]). Absent a duly constituted meeting which could have discharged Loeb as a director for cause—for which notice and some type of hearing would have been necessary—Baum lacked the power to bar him from the corporate premises. The reasons for this conclusion relate to the fundamentals of the corporate structure which reposes management of corporate business in boards of directors (Business Corporation Law, § 701; *Cassidy v Uhlmann,* 170 NY 505; *Beveridge v New York El. R. R. Co.,* 112 NY 1) and regards them as operating in a fiduciary capacity (see *Billings v Shaw,* 209 NY 265) or as trustees for the stockholders (see *People ex rel. Manice v Powell,* 201 NY 194). As the court stated in *Beveridge (supra,* p 22): "All powers directly conferred by statute, or impliedly granted, of necessity, must be exercised by the directors who are constituted by the law as the agency for the doing of corporate acts * * * Within the chartered authority they have the fullest power to regulate the concerns of a corporation". Charged with such duties and obligations, a director who is present on corporate premises can hardly be guilty of criminal trespass and, under the circumstances described, the jury could well have believed that the defendants had no probable cause to have Loeb arrested.

■ The malice issue is a simpler one. Malice may be proven circumstantially (see *Dean v Kochendorfer,* 237 NY 384) and a jury may infer malice from the absence of probable cause (see *Munoz v City of New York,* 18 NY2d 6, *supra; Bradner v Faulkner,* 93 NY 515; see, also, Restatement, Torts 2d, § 669). Therefore, on this record, the jury's conclusion that probable cause was lacking disposes of the fact issues relating to malice.

## IV

■ Finally, there is the matter of damages. As a general rule, the plaintiffs in a malicious prosecution action may

recover in damages for whatever are the direct, natural and proximate results of the criminal prosecution (see *Broughton v State of New York,* 37 NY2d 451, *supra),* including those for suffering arrest and imprisonment (see *Halberstadt v New York Life Ins. Co.,* 194 NY 1, *supra; Sheldon v Carpenter,* 4 NY 579), injury to reputation and character *(Sheldon v Carpenter, supra; Scott v Dennett Surpassing Coffee Co.,* 51 App Div 321; Restatement, Torts 2d, § 670), injury to feelings (see *Halberstadt v New York Life Ins. Co., supra),* and counsel fees and expenses in defending the criminal prosecution (see *Worden v Davis,* 195 NY 391; *Schanbarger v Kellogg,* 43 AD2d 362, affd 37 NY2d 451, cert den 423 US 929; *Broughton v State of New York,* 43 AD2d 389, mod on other grounds 37 NY2d 451, cert den *sub nom. Schanbarger v Kellogg,* 423 US 929, *supra; Mastic Fuel Serv. v Van Cook,* 55 AD2d 599; see, generally, Restatement, Torts 2d, §§ 670, 671).

■ On the issue of compensatory damages, there was no proof that news of the arrests became public, except to the extent that it was required to be divulged in Vanguard's 10-K statements filed with the Securities and Exchange Commission, its tender offer, and its annual reports. Furthermore, there was no proof that plaintiffs had been incarcerated after their arrest, socially ostracized afterwards, or that they were unable to procure employment because of their arrests. Neither plaintiff produced any proof that he was required to disclose the fact of his arrest upon any job interview or that the arrest in any way impaired his ability to find employment. Any damages sustained by the plaintiffs flowing from a wrongful termination of their employment with Vanguard—such as decreased income, loss of prospective salary increases and loss of life and health insurance—are not compensable in this action. Neither, on this record, are they the proximate results of the malicious prosecution.

Nevertheless, both plaintiffs had no prior arrest record and were subjected to the personal humiliation and invasion of liberties involved in arrest, handcuffing, search and booking and fingerprinting as well as the burden of pending criminal proceedings for three months. The evidence also revealed that Loeb's legal costs were $2,500 while those of Sauers were $750, amounts which were stipulated to have been reasonable. On the facts presented, the compensatory damages should be reduced to $17,500 for Loeb and $15,750 for Sauers.

■ ■ We also believe that the punitive damages awards

should be further reduced. In *Nardelli v Stamberg* (44 NY2d 500, 503), the Court of Appeals reversed this court's holding that punitive damages were unavailable as a matter of law and stated the New York rule to be that such damages "may be awarded in an action for malicious prosecution if the defendant was motivated by actual malice or [in a vicarious liability situation] acted in reckless disregard of the plaintiff's rights". Of significance in *Nardelli* was the declaration (p 503) that "the actual malice necessary to support an action for malicious prosecution also serves to justify an award of exemplary damages." Although the court reaffirmed that the award of punitive damages and their amount were questions which reside primarily with the trier of facts, "[t]his does not mean that the Appellate Division or the trial court Judge may never interfere with such a jury award; those courts may, of course, exercise their own discretionary authority to overturn an excessive jury verdict" (p 503). To reduce an award of punitive damages, the amount must be "so grossly excessive 'as to show by its very exorbitancy that it was actuated by passion'" (p 504). We agree with Trial Term that the respective exemplary awards reflect the existence of impermissible "passion," but we believe that a further reduction to the sum of $10,000 exemplary damages for each plaintiff is warranted.

Accordingly, the order which granted a new trial as to damages unless plaintiffs stipulated to a reduction thereof should be further modified to the extent of reducing the damages in favor of Loeb to $17,500 compensatory and $10,000 punitive and that of Sauers to $15,750 compensatory and $10,000 punitive.

HOPKINS, J. P., MARGETT and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, dated March 12, 1979, modified, on the law, by further reducing the amount of damages awarded in the third decretal paragraph thereof as follows:

| plaintiff Loeb | — compensatory to $17,500 |
| | punitive to $10,000 |
| plaintiff Sauers | — compensatory to $15,750 |
| | punitive to $10,000. |

As so modified, order affirmed insofar as appealed from, without costs or disbursements. Plaintiffs' time to execute the stipulations provided for in the order under review is extended to 30 days after service upon them of a copy of the

order to be made hereon, together with notice of entry thereof.