■ MARINA VASARHELYI, Appellant, v NEW SCHOOL FOR SOCIAL RESEARCH et al., Respondents. [646 NYS2d 795] —Judgment of the Supreme Court, New York County (Stuart Cohen, J.), entered June 26, 1995, bringing up for review an order of

the same court and Justice, entered May 17, 1995 which, in an action alleging intentional infliction of emotional distress, defamation and prima facie tort, granted defendants' motion to dismiss the complaint for failure to state a cause of action, unanimously modified, on the law, to the extent of denying defendants' motion with respect to the first cause of action for intentional infliction of emotional distress and reinstating that cause of action and, except as so modified, affirmed, without costs. The appeal from the order is unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiff Marina Vasarhelyi was formerly the Controller and Treasurer of the New School for Social Research. As its chief financial officer, she was responsible for financial planning and for the review of budgets and expenditures. During 1993, plaintiff expressed reservation about the authority of the President of the New School, defendant Jonathan Fanton, to requisition payment for personal expenses, questioning his practice of repaying the institution at a much later date, often by way of an offset against cash "business expenses". Dr. Fanton became particularly annoyed when, in early 1994, plaintiff indicated her disapproval of his decision to hire, without the customary formalities (including review by the board of trustees), "a man * * * in his * * * 20's [whose] qualifications * * * were unclear" for the newly created position of "consultant to the president" at the substantial (and undisclosed) annual salary of $62,000. She further challenged Dr. Fanton's request for reimbursement for travel expenses for a trip to Europe, on which he had been accompanied by the employee (then on retainer as a consultant).

Dr. Fanton did not react well to plaintiff's criticism with respect to the financial ramifications of his actions. The amended verified complaint charges that he caused a confidential fundraising memorandum to be prepared and circulated to certain school officials, including plaintiff, containing remarks that might be construed as mildly critical of certain school trustees. When the memorandum came into the possession of these trustees, Dr. Fanton "engaged criminal attorneys to conduct an investigation ostensibly to determine the identity of the person responsible for the dissemination of the memorandum". Plaintiff was singled out for some ten hours of intense interrogation by the attorneys, conducted over the course of several days. They were hostile, abusive and threatening, stating that "the FBI in Washington was assisting in the investigation". They humiliated her for her use of English (which is not her native language) and probed into her personal relationships

with co-workers, trustees and even her husband, impugning both her honesty and her chastity. When plaintiff complained to Dr. Fanton, she was told that she must submit to the interrogation. Another school official, Joseph Porrino, told her that she was obliged to undergo further examination "or face the consequences".

The complaint states that, on the morning of May 9, 1994, when the interrogation was scheduled to resume at 8:00 A.M., she submitted a written request that another school employee be present during questioning. Dr. Fanton denied the request and, upon plaintiff's refusal to continue, ordered her to leave the premises. Thereupon, her keys were taken, she was removed from her office by Mr. Porrino, and she was advised that her employment was suspended.

Plaintiff alleges that, although other school employees were questioned, inquiry was directed at plaintiff's conduct, habits and activities, so that "my colleagues at the School came to believe that I had been suspected of serious wrongdoing" resulting in rumors that plaintiff had "been caught juggling the books", had "been involved in embezzlement and fraud" and had even engaged in "sexual relationships with Trustees." At the monthly executive committee meeting of the board in June, Dr. Fanton stated that plaintiff's refusal to cooperate with the investigation should be regarded as an indication of her guilt in connection with the disclosure of the confidential memorandum and recommended that she be terminated. The board passed a resolution discharging plaintiff from her position, effective June 23, 1994.

As a result of her experience, plaintiff complains that she has suffered physical symptoms, including significant weight loss and cessation of menstruation, as well as anxiety and sleeplessness, requiring medication. It is further alleged that she sustained damages as the result of injury to her professional reputation and loss of wages.

We agree that Dr. Fanton's alleged statement to the trustees regarding plaintiff's failure to cooperate with the investigation is not defamatory per se. The remark does not impugn plaintiff's competence as a professional (see, Liberman v Gelstein, 80 NY2d 429, 436), being only tangentially relevant to her general character and not at all indicative of her capability as Controller and Treasurer (compare, Brown v Albany Citizens Counsel on Alcoholism, 199 AD2d 904, 904-905). Lost income does not qualify as special damages (Aronson v Wiersma, 65 NY2d 592, 595; see also, Talbot v Johnson Newspaper Corp., 124 AD2d 284, 286-287), and the cause of ac-

tion for defamation is therefore deficient. Similarly insufficient is plaintiff's action alleging prima facie tort (see, Constant v Hallmark Cards, 172 AD2d 641, 642).

We do not agree with Supreme Court that defendants' actions constitute mere "threats, annoyances or petty oppressions or other trivial incidents which must necessarily be expected and are incidental to modern life no matter how upsetting" (citing Ruggiero v Contemporary Shells, 160 AD2d 986, 987, quoting Lincoln First Bank v Barstro & Assoc. Contr., 49 AD2d 1025). It has been noted that "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for the intentional infliction of emotional distress" (Nader v General Motors Corp., 25 NY2d 560, 569; Doe v American Broadcasting Cos., 152 AD2d 482, 483). That this jurisdiction does not recognize a cause of action for the "abusive or wrongful discharge" of an at-will employee (Murphy v American Home Prods., 58 NY2d 293, 302) does not dictate the result that an employer's outrageous conduct or severe abuse must be condoned, simply because it is directed at an employee preliminary to termination (see, Elson v Consolidated Edison Co., 226 AD2d 288). As a leading authority states the principle, "The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests" (Prosser & Keeton, Torts § 12, at 61 [5th ed]).

As president of the academic institution that employed her, defendant Fanton was in a position giving him apparent power to impair plaintiff's professional standing. The engagement of criminal attorneys to conduct the investigation sufficiently intimated the threat of prosecution to bring this matter within the ambit of cases construing, as outrageous, threats of unjustified criminal charges or groundless litigation (Elson v Consolidated Edison Co., supra [abusive interrogation concerning drug use]; Levine v Gurney, 149 AD2d 473 [filing of false complaint]; Green v Fischbein, Olivieri, Rosenholc & Badillo, 135 AD2d 415 [baseless eviction proceedings]). As this Court stated in Kaminski v United Parcel Serv. (120 AD2d 409, 412 [threatened criminal prosecution]), "assuming the truth of the facts pleaded, the acts complained of could be found by a trier of fact to amount to extreme and outrageous conduct which cannot be tolerated in a civilized community and that they, therefore, adequately state a cause of action for intentional

infliction of emotional distress" (see also, Halio v Lurie, 15 AD2d 62, 67; Prosser & Keeton, Torts § 12, at 60-61 [5th ed]). Concur—Milonas, J. P., Ellerin, Rubin, Ross and Mazzarelli, JJ.