**Eric KURSCHUS, Plaintiff,**

v.

**PAINEWEBBER, INC., Brian Sager, Marlene Sager, Pat McDonald, County of Nassau and John Does 1 through 10, Defendants.**

**No. 95 Civ. 1652 (PKL).**

United States District Court,
S.D. New York.

Aug. 12, 1998.

---

Heller, Horowitz & Feit, P.C., New York City (Maurice W. Heller, May Orenstein, of counsel), for Plaintiff.

Epstein Becker & Green, P.C., New York City (Philip M. Berkowitz, Claudia M. Cohen, of counsel), for Defendant Marlene Sager.

Dewey Ballantine, New York City (Joseph Anglund, of counsel), for Defendant Brian Sager.

Owen B. Walsh, County Attorney, County of Nassau, Mineola, NY (Taso Kalapoutis, of counsel), for Defendants County of Nassau and John Does 1 through 10.

### OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Eric Kurschus ("Kurschus") brings this action against defendants Brian Sager, Marlene Sager, the County of Nassau, and John Does 1 through 10 (various police officers, police detectives, and employees of Nassau County), alleging violation of his civil rights under Title 42, United States Code ("U.S.C."), Section 1983, and various state-law torts. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment. For the reasons stated below, defendants' motions are granted in part and denied in part.

### BACKGROUND [1]

In August, 1991, Kurschus began work as a sales assistant in the Mortgage Origination Sales Department of PaineWebber, Inc. ("PaineWebber"). By the summer of 1992, PaineWebber assigned Kurschus to work for two mortgage securities salespersons, Brian Sager and Cosmo Fontana.

As PaineWebber encouraged its employees to foster personal relationships outside of the office, Kurschus and his wife attended several events that Brian and his wife, Marlene Sager, also attended. At a PaineWebber Christmas party in December, 1992, Marlene Sager began to pursue Kurschus. Despite the presence of Kurschus's wife and Brian Sager at the party, Marlene Sager hugged Kurschus, held his arm, and brushed her body against his.

PaineWebber employees in the Mortgage Origination Sales Department did not have individual phone lines, but shared a desk

---

1. The vast majority of the facts in the instant matter are in dispute. Kurschus's version of events varies greatly from those of Brian and Marlene Sager. In considering a motion for summary judgment, a court must construe the reasonable inferences in favor of the non-moving party. *See R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54 (2d Cir.1997). Accordingly, for purposes of this Opinion, the Court credits Kurschus's version where the evidence conflicts.

phone. Marlene Sager would use this phone to call her husband, but following the Christmas party, Marlene Sager began to call Kurschus on a regular basis. Kurschus and Marlene Sager developed a relationship through these phone calls and confided intimate details of their lives.

In June of 1993, the Sagers invited Kurschus and his wife to dinner at the Water Club in Manhattan. Marlene Sager rubbed Kurschus's chest when she walked by him in a hallway and made a sexually provocative remark to Kurschus, which she then repeated to Kurschus's wife. Kurschus and Marlene Sager continued to speak regularly on the telephone over the next several months. On November 11, 1993, Marlene Sager invited Kurschus to dinner at a restaurant in Manhattan. During the meal, Kurschus told Marlene Sager that nothing physical would happen between them and that they must remain friends. Following dinner, they went for drinks at another Manhattan restaurant, One If By Land, Two If By Sea.

Kurschus and Marlene Sager met for lunch in December, 1993, at Manana Restaurant in Manhattan. Kurschus reiterated to Mrs. Sager that they would remain friends and that they should limit their contact. Marlene Sager agreed that that was best for everyone. However, at a 1993 PaineWebber Christmas party held at the Sager residence later that month, Marlene Sager held Kurschus's arm and introduced him to her friends as "her boy". Later, she demanded to know why Kurschus avoided and ignored her throughout the evening. Additionally, Marlene Sager cornered Mrs. Kurschus and encouraged her to leave her husband.

Several months later, Brian Sager invited Kurschus, George Tasolides ("Tasolides"), and Mark Wallis, all PaineWebber employees, to play a round of golf at Sager's country club and to have dinner at his home. Kurschus accepted the invitation, and on May 14, 1994, the foursome played eighteen holes of golf. Brian Sager, Kurschus, and Tasolides then returned to the Sager home for dinner. Before dinner, the three men and Marlene Sager shared drinks on the patio. The conversation turned to a new home purchased by a fellow PaineWebber employee in Sands Point, New York, near the Sagers' home in Port Washington. Brian Sager and Tasolides previously had viewed the property, but Marlene Sager, a licensed real estate agent, offered to show the home to Kurschus.

Kurschus accepted the invitation, and Marlene Sager drove him to the area of the property, which was secluded. Marlene Sager parked her car, and then a sexual incident happened between Marlene Sager and Kurschus. Kurschus maintains that Marlene Sager initiated the activity, which culminated with Mrs. Sager performing oral sex on Kurschus in the front seat of her car, and that the entire incident was consensual. Mrs. Sager contends that Kurschus ripped her blouse and forced her against her will to perform the sexual act on him. They then returned to the Sager home for dinner. After an uneventful meal, Marlene Sager walked Kurschus and Tasolides to Tasolides's car and kissed them both goodnight.

The next day, while at his home, Kurschus spoke on the telephone with Marlene Sager, who, unknown to Kurschus, had told her husband that Kurschus forced himself on her. Kurschus then spoke on the telephone with Brian Sager, who informed Kurschus that they could not work together anymore and that Kurschus must take an HIV test. Since Kurschus's wife was present, Brian Sager and Kurschus agreed to discuss the matter further at work on Monday. Neither Brian nor Marlene Sager mentioned the issue of force to Kurschus during these conversations.

Shortly after Kurschus arrived at work on Monday, May 16, 1994, he met with Brian Sager. Kurschus apologized for the incident, but Brian Sager insisted that Kurschus leave PaineWebber and take an HIV test. Kurschus refused both requests. He stated that he would talk to Al Maripodi, then PaineWebber's Senior Vice President in charge of mortgage origination, about a transfer within PaineWebber. Maripodi agreed to allow Kurschus to work for Fontana and Tasolides, and not for Brian Sager.

Mrs. Kurschus, crying and hysterical, called her husband at work that morning after she received a telephone call from Mar-

lene Sager. The conversation with Marlene Sager had left Mrs. Kurschus shaken and upset. Kurschus left the office for the day to go home to his wife. Before Kurschus arrived home, Brian Sager called Mrs. Kurschus. This conversation left her more upset than before. That evening, Maripodi called Kurschus and informed him that the Sagers accused him of using force to coerce sex from Marlene Sager. Maripodi indicated that the situation was out of hand and that Kurschus and Brian Sager should meet at work the next morning, Tuesday, May 17, 1994.

When Kurschus arrived at work the next morning, he met with Brian Sager, who indicated that the police would arrive soon to arrest Kurschus. Marlene Sager filed a report with the Nassau County Police Department the preceding day, May 16, and the detectives decided to arrest Kurschus. Following the meeting, Pat McDonald, the National Sales Manager for Fixed Income Securities at PaineWebber, instructed Kurschus to leave for the day. Later on Tuesday, May 17, two Nassau County detectives took a written statement from Brian Sager at PaineWebber's offices.

On Wednesday, May 18, Kurschus arrived at work as usual. Approximately thirty minutes later, two Nassau County detectives arrived at PaineWebber and placed Kurschus under arrest. They did not possess an arrest warrant. The detectives then transported Kurschus to Mineola, Long Island, where the police photographed and fingerprinted Kurschus. He was arraigned in the Nassau County Courthouse and charged with Sodomy in the First Degree, a felony classified as violent. Kurschus could not raise the bail collateral in time to avoid overnight imprisonment in the Nassau County Correction Center in Uniondale, Long Island.

The night in jail was a difficult experience for Kurschus. When informed of the crime with which Kurschus was charged, some prison guards, as well as the prison doctor, announced to the other prisoners that Kurschus was a molester of little boys. This led to threats and comments from the other prisoners that made Kurschus fear for his safety. The next morning, Kurschus posted his bond and was released from custody.

The Nassau County District Attorney (the "D.A.") scheduled the case for presentation to the grand jury numerous times in the following months; the D.A. adjourned the hearing each time. Finally, in December, 1994, with automatic dismissal under the speedy trial requirements set for early January, 1995, the D.A. scheduled a grand jury hearing in the case. As Marlene Sager decided not to testify, the grand jury dismissed the charges against Kurschus "in the interest of justice." In the interim, Kurschus lost his position with PaineWebber, and he and his wife divorced.

In March, 1995, Kurschus filed the Complaint in the instant matter. He claims against Brian and Marlene Sager for malicious prosecution, intentional infliction of emotional distress, negligent prosecution, *prima facie* tort, and conspiracy to violate his civil rights, pursuant to 42 U.S.C. § 1983. Against Nassau County and John Does 1 through 10, Kurschus claims for malicious prosecution, false arrest and imprisonment, and violation of his civil rights, pursuant to § 1983. Kurschus also filed a claim against Nassau County for negligent supervision. The Sagers, Nassau County, and John Does 1 through 10 now move for summary judgment.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, it is this Court's responsibility "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986). Nonetheless, summary

judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 325, 106 S.Ct. 2548 (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* (internal citations omitted). The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.* at 322–23. The non-moving party may not rely solely on its pleadings nor on conclusory factual allegations in satisfying this burden. *See Gray v. Darien,* 927 F.2d 69, 74 (2d Cir.1991). The non-moving party instead must offer specific evidence supporting its claim that there exists a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In demonstrating that the factual issue in dispute is "genuine", the non-moving party must offer evidence to allow a reasonable jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. MALICIOUS PROSECUTION

■ Kurschus claims that the actions of the Sagers, Nassau County, and John Does 1 through 10 constitute malicious prosecution. "In order to state a claim for the tort of malicious prosecution under New York State law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997) (Kearse, J.) (quoting *Russell v. Smith,* 68 F.3d 33, 35 (2d Cir.1995)), *cert. denied,* —— U.S. ——, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *see also*

*Broughton v. State,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). Defendants do not dispute that the fourth element is an issue of material fact for a jury to decide, but base their summary judgment motions on the first three elements of the claim.

### A. *Initiation of a Criminal Proceeding*

■ Under New York law, the minimum action necessary to sustain a claim of malicious prosecution is a request by a defendant that the authorities prosecute a plaintiff. *See Raysor v. Port Authority of New York & New Jersey,* 768 F.2d 34, 39 (2d Cir.1985); *see also Gray v. Millea,* 892 F.Supp. 432, 436 (N.D.N.Y.1995). "The mere reporting of a crime is insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Viza v. Town of Greece,* 94 A.D.2d 965, 966, 463 N.Y.S.2d 970, 971 (4th Dep't 1983). On May 16, 1994, Marlene Sager filed a criminal complaint with the Nassau County Police against Kurschus and specifically requested that the police arrest him. The Nassau County Police attempted to arrest Kurschus the next day, May 17. When they arrived at PaineWebber, Kurschus already had left for his home. Only then did the police take the statement of Brian Sager, in which he described his wife's demeanor following the incident. He did not claim to have witnessed the event. Brian Sager thus argues that he did not initiate the criminal proceeding against Kurschus, and that the Court must grant him summary judgment on the malicious prosecution claim.

However, in his statement to the police, Brian Sager indicates that he told Kurschus on the morning of May 17 that Brian Sager had contacted the police. This comment lends credibility to Kurschus's allegation that Brian Sager offered to "call off the dogs" (meaning the police), if Kurschus resigned from PaineWebber. As Brian Sager had contact with the Nassau County Police on May 16, most likely when Marlene Sager gave her written statement, the Court determines that a material issue of fact exists as to the role played by Brian Sager in the

initiation of criminal proceedings against Kurschus.

## B. *Termination of the Proceeding in Plaintiff's Favor*

█ The Sagers, Nassau County, and John Does 1 through 10 claim that the Court must grant them summary judgment on Kurschus's malicious prosecution cause of action because Kurschus cannot prove that the criminal proceeding terminated in his favor. "A criminal proceeding terminates favorably to the accused, for purposes of a malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence." *MacFawn v. Kresler*, 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996). The issue of whether a termination was favorable to the accused generally is a matter of law for the court. *See Murphy*, 118 F.3d at 950. However, if there are questions as to the circumstances that surround the dismissal, the issue is one for the trier of fact. *See id.; see also Lenehan v. Familo*, 79 A.D.2d 73, 76, 436 N.Y.S.2d 473, 475 (4th Dep't 1981).

█ The Nassau County Grand Jury dismissed the charges against Kurschus "in the interest of justice," pursuant to N.Y.Crim.Pro.L. § 170.40. "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948 (citing cases). To determine whether a termination is indicative of innocence, a court necessarily must examine the nature and circumstances of the termination and inquire as to whether the failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution." *Loeb v. Teitelbaum*, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980), *modified on other grounds*, 80 A.D.2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981); *see also Murphy*, 118 F.3d at 948. "[D]ismissals by the prosecution 'in the interests of justice' under N.Y.Crim.Pro.L. § 170.40, are generally considered not to be dispositions in favor of the accused." *Id.* at 949 (citing cases).

*Murphy* involved a claim for malicious prosecution in which the underlying criminal action was dismissed for failure to comply with "speedy trial" requirements. The Court analyzed the history and principles of the requirement of a termination favorable to the accused and determined that a dismissal for lack of timely prosecution satisfies this requirement. *Id.* at 950. The main thrust of the Court's logic indicated that " 'the failure to proceed to the merits compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution.'." *Id.* at 949 (quoting *Loeb*, 77 A.D.2d at 101, 432 N.Y.S.2d at 494). Conversely, if dismissals for lack of timely prosecution were not terminations favorable to the accused, the accused would be placed in the unfair position of having to waive his speedy trial rights in order to protect his civil claim for malicious prosecution. *See Murphy*, 118 F.3d at 949–50.

In the instant matter, the Sagers postponed their appearances before the grand jury numerous times. If the grand jury did not dismiss the case in December, 1994, the case was subject to dismissal for the lack of timely prosecution in January, 1995. In that case, the Court would conclude that the matter terminated in favor of the accused. However, as the grand jury took an affirmative step to dismiss the case approximately one month prior to the time for automatic dismissal, the defendants claim that the termination of the criminal proceeding was not favorable to Kurschus.

Kurschus alleges that the Sagers did not appear before the grand jury because they knew that their claims were untrue, and they did not want to subject themselves to charges of perjury. Marlene Sager indicates that she dropped the matter because she had moved forward with her life and did not want to relive the traumatic event. The Court finds that an issue of fact exists as to whether "the failure to proceed to the merits compels an inference of such an unwillingness to do so as to imply a lack of reasonable grounds for the prosecution." *Loeb*, 77 A.D.2d at 101, 432 N.Y.S.2d at 494. Summary judgment therefore is inappropriate on this issue. The jury will determine the nature and circumstances of the dismissal;

Kurschus will have the opportunity to demonstrate at trial that the criminal matter terminated in his favor.

### C. *Probable Cause*

■ Brian Sager, Nassau County, and John Does 1 through 10 argue that Kurschus cannot prove that they lacked probable cause for commencing the proceeding against Kurschus and that the Court must grant summary judgment on the malicious prosecution claim.

> In the context of a malicious prosecution claim, probable cause under New York law is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."

*Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) (quoting *Pandolfo v. U.A. Cable Systems of Watertown*, 171 A.D.2d 1013, 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991)). The New York Court of Appeals has explained that:

> the issue of probable cause is a question of law to be decided by the court only where there is no real dispute as to the facts or to the proper inferences to be drawn from such facts.... Where there is "conflicting evidence, from which reasonable persons might draw different inferences ... the question [is] for the jury."

*Parkin v. Cornell Univ.*, 78 N.Y.2d 523, 529, 577 N.Y.S.2d 227, 583 N.E.2d 939 (1991) (quoting *Veras v. Truth Verification Corp.*, 87 A.D.2d 381, 384, 451 N.Y.S.2d 761, 764 (1st Dep't 1982)).

■ Brian Sager does not have the burden of proving that he had probable cause to believe that Kurschus violated Marlene Sager; instead, Kurschus must show that Brian Sager lacked such probable cause. However, in order to gain summary judgment on this issue, Brian Sager must demonstrate as a matter of law that he had probable cause to initiate the criminal action against Kurschus. *See Rounseville*, 13 F.3d at 630. The facts before the Court consist mainly of the conflicting testimony of Kurschus and the Sagers. Drawing all reasonable inferences in favor of Kurschus, the Court cannot conclude that Brian Sager had probable cause to believe that Kurschus committed a crime.

■ Nassau County and John Does 1 through 10 are in a different position than Brian Sager. Marlene Sager filed a criminal complaint with the Nassau County Police, in which she alleged that Kurschus violated her and she requested his arrest. Brian Sager then outlined his knowledge of the events in a report to the police. "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).[2] There is no evidence that the police had any reason to doubt Marlene Sager's veracity at the time she filed her complaint. Accordingly, Nassau County and John Does 1 through 10 are entitled to summary judgment on the malicious prosecution claim.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In New York, a claim for intentional infliction of emotional distress claim must allege four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the outrageous conduct and injury; and (4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699

---

**2.** The Court relies upon *Rounseville* and *Singer* in its analysis of the element of probable cause in claims for malicious prosecution. In *Rounseville*, as well as in *Singer*, the Second Circuit has found as a matter of law that a dismissal "in the interest of justice" is not a termination favorable to the accused. *See Rounseville*, 13 F.3d at 629; *see also Singer*, 63 F.3d at 118. The Court, relying on *Murphy*, 118 F.3d at 949, determines that a dismissal "in the interest of justice" *generally* is not considered a dismissal in favor of the accused, but may be so considered under certain circumstances. Thus, with respect to the issue of favorable termination, the Court follows the *Murphy* decision, as opposed to the *Rounseville* decision, as the Second Circuit announced *Murphy* in 1997, three years after *Rounseville* and two years after *Singer*.

(1993). A review of the applicable case authorities shows the heavy burden imposed on a plaintiff to satisfy the first element of this test. *See id.; see also Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotation marks omitted)). "[T]he requirements of the rule are rigorous, and difficult to satisfy." *Howell*, 81 N.Y.2d at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (internal quotation marks omitted); *see also Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 ("strict standard" for intentional infliction of emotional distress claims).

■ Although the standard of extreme and outrageous conduct is difficult to prove, it is not impossible. *See Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 661–62, 646 N.Y.S.2d 795, 797 (1st Dep't 1996); *see also Levine v. Gurney*, 149 A.D.2d 473, 539 N.Y.S.2d 967 (2d Dep't 1989). The allegations made by Kurschus concerning the actions of the Sagers are quite serious. Assuming that Kurschus is correct, the Sagers plotted to accuse him of a heinous crime and exacted a devastating toll on Kurschus's life. A reasonable jury could conclude that such behavior was sufficiently extreme and outrageous to satisfy the first element of the tort of intentional infliction of emotional distress. Accordingly, summary judgment is inappropriate on this claim.

## IV. PRIMA FACIE TORT

■ Under New York law, there are four elements required to support a claim of *prima facie* tort: (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; and (4) by an act or series of acts that would otherwise be lawful. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984). An "essential element of [*prima fa-*

*cie* tort] is the allegation of special damages, fully and accurately stated with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts." *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486, 475 N.Y.S.2d 1, 6 (1st Dep't 1984).

■ Marlene Sager argues that because Kurschus (1) has no cognizable conventional tort claims and (2) did not plead nor particularize any special damages, the Court must grant summary judgment to her on Kurschus's *prima facie* tort claim.[3] As the Court determines, *supra*, that Kurschus's claims of malicious prosecution and intentional infliction of emotional distress survive the Sagers' motions for summary judgment, Marlene Sager's first argument is without merit. However, the Complaint fails to allege or to specify special damages. The record before the Court also is devoid of any mention of particularized special damages. Accordingly, the Court grants summary judgment to Brian and Marlene Sager as to Kurschus's *prima facie* tort claim.

## V. NEGLIGENT PROSECUTION

■ Kurschus alleges that Brian Sager's actions in the matter were knowing, but to the extent that Brian Sager did not have actual knowledge of the falsity of his wife's allegations, Kurschus seeks relief on a claim of negligence. Under New York law however, there is no cognizable claim for "negligent" prosecution. *See LaMar v. Town of Greece*, 97 A.D.2d 955, 956, 468 N.Y.S.2d 744, 745 (4th Dep't 1983) (dismissing claims based on "negligence" that closely resembled claims of negligent prosecution). Prosecutions must be malicious to support a cause of action, not merely negligent. Accordingly, the Court grants summary judgment to Brian Sager on the negligence claim.

## VI. FALSE ARREST & IMPRISONMENT

■ Kurschus alleges that the actions of Nassau County and John Does 1 through

---

3. In his motion, Brian Sager seeks an Order that grants summary judgment as to all claims pending against him. However, his Memorandum of

Law does not address Kurschus's *prima facie* tort claim, which names Brian Sager.

10 also constitute false arrest and imprisonment. "Under New York law, the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer,* 63 F.3d at 118 (quoting *Broughton,* 37 N.Y.2d at 456, 373 N.Y.S.2d 87, 335 N.E.2d 310); *see also Curley v. AMR Corp.,* Nos. 96–9690, 97–7020, slip op. at 5057–58 (2d Cir. July 22, 1998). As the police arrested Kurschus without an arrest warrant, the Court presumes that the arrest and imprisonment were unlawful. *See Broughton,* 37 N.Y.2d at 458, 373 N.Y.S.2d 87, 335 N.E.2d 310. However, Nassau County and John Does 1 through 10 may establish justification for the arrest and imprisonment by demonstrating probable cause. *See id.* The Court determines, *supra,* that Nassau County and John Does 1 through 10 had probable cause to effect the arrest of Kurschus. Therefore, the claims of false arrest and imprisonment are dismissed.

## VII. § 1983 CLAIMS

Kurschus alleges that the conduct of the Sagers, Nassau County, and John Does 1 through 10 also violates 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. *Claims Against Nassau County and John Does 1 through 10*

■ Kurschus again alleges that the Nassau County defendants are liable for malicious prosecution and false arrest. In order to succeed on these federal claims, Kurschus first must prove violation of the underlying state tort, and also must show violation of a constitutionally protected right. *See Murphy,* 118 F.3d at 947 (Section 1983 claims for malicious prosecution governed by state law standard); *see also Fincher v. County of Westchester,* 979 F.Supp. 989, 998 (S.D.N.Y. 1997) ("[A] claim for false arrest under § 1983 is substantially the same as a claim for false arrest under New York law."); *Singer,* 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). As the Court determines, *supra,* that Nassau County and John Does 1 through 10 are entitled to summary judgment on Kurschus's state law claims of malicious prosecution and false arrest, these defendants are entitled to summary judgment on the federal claims as well.

### B. *Claims Against the Sagers*

■ Pursuant to § 1983, Kurschus alleges that the Sagers conspired with the Nassau County defendants to violate Kurschus's civil rights. "While substantive claims under § 1983 are normally brought only against state officials, 'a § 1983 claim may be proved by showing that a person acting under color of state law ... collaborated or conspired with a private person ... to deprive the plaintiff of a constitutional right....'" *Singer,* 63 F.3d at 119 (quoting *Fries v. Barnes,* 618 F.2d 988, 990 (2d Cir.1980)). Kurschus bears the burden of proving that the Sagers conspired with the Nassau County police to effect the false arrest and malicious prosecution of Kurschus.

■ Kurschus has presented no evidence that any Nassau County official reached a "meeting of the minds" the Sagers. *See Dahlberg v. Becker,* 748 F.2d 85, 93 (2d Cir. 1984). In fact, several Nassau County officials, including the prosecutor, Joy Watson, Esq., and the police officers involved in the investigation testified that they did not know the Sagers prior to the time Marlene Sager filed her complaint against Kurschus. As Kurschus has submitted only conclusory allegations of the alleged conspiracy between the Sagers and the Nassau County officials, the Sagers are entitled to summary judgment on Kurschus's § 1983 claim. *See Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993).

## VIII. NEGLIGENT SUPERVISION CLAIM AGAINST NASSAU COUNTY

Kurschus claims that the conduct of certain Nassau County police officers and officials constitutes false arrest and malicious prosecution. As a result of this alleged conduct, Kurschus argues that Nassau County is liable for the tort of negligent supervision and training. "[A] cause of action sounding in negligence is legally sustainable against a [county] when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer." *Barr v. County of Albany,* 50 N.Y.2d 247, 257, 428 N.Y.S.2d 665, 406 N.E.2d 481 (1980); *see also V. Weglarz, Inc. v. City of Cohoes,* 102 A.D.2d 953, 953, 477 N.Y.S.2d 1005, 1006 (3d Dep't 1984). The Court determines, *supra,* that the police officers had probable cause to effect the arrest and prosecution of Kurschus. As Kurschus has no cognizable claims against the police officers and County officials, he likewise has no claim against Nassau County for negligent training and supervision. Accordingly, the Court grants summary judgment to Nassau County on the negligence cause of action.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are HEREBY GRANTED in part and HEREBY DENIED in part. The remaining parties are directed to appear for a pre-trial conference in Courtroom 18B at 500 Pearl Street on September 18, 1998, at 9:30 a.m.

**SO ORDERED.**